STATE OF NORTH CAROLINA v. WILLIE ERVIN FISHER

No. 62A93

(Filed 29 July 1994)

**1. Jury § 114 (NCI4th) — first-degree murder — individual voir dire denied — no error**

The trial court did not err in a first-degree murder prosecution by denying defendant's pretrial motion for an individual sequestered *voir dire* where defendant did not show how the answers to *voir dire* prejudiced him in any way or unduly "educated" other jurors on how to be removed from the panel.

**Am Jur 2d, Jury § 197.**

**2. Jury § 120 (NCI4th) — first-degree murder — jury selection — juror questionnaire — denied**

The trial court did not err in a first-degree murder prosecution by denying defendant's pretrial motion to require that prospective jurors complete a two-page questionnaire prior to entering the courtroom for *voir dire* examination. Defendant does not allege that he was in any way prohibited from individually asking prospective jurors the same questions set out in his questionnaire and failed to show that the court abused its discretion or that he was prejudiced by the court's denial of his motion.

**Am Jur 2d, Jury §§ 201, 202.**

**3. Jury § 140 (NCI4th) — first-degree murder — jury selection — questions regarding felony murder rule — no prejudice**

There was no prejudice in a first-degree murder prosecution where the trial court overruled defendant's objection to the questioning of prospective jurors by the district attorney regarding the felony murder rule. Assuming error, there was no prejudice because the district attorney made clear in his question that the judge, not he, would be instructing jurors on the law of the case and the trial court gave a correct instruction on the felony murder rule.

**Am Jur 2d, Jury §§ 201, 202.**

4. **Criminal Law § 473 (NCI4th) — first-degree murder — introduction of counsel — forecast of evidence — objection sustained**

There was no abuse of discretion in a first-degree murder prosecution during the introduction of defense counsel to prospective jurors where the trial court sustained the district attorney's objections to statements of defense counsel regarding the circumstances of the victim's death and the defendant's consumption of alcohol and controlled substances prior to the victim's death. Defendant was allowed to ask questions regarding attitudes of prospective jurors towards drugs and alcohol and defendant presented information regarding the circumstances of the victim's death and defendant's consumption of alcohol and controlled substances during his opening statement.

**Am Jur 2d, Trial §§ 497 et seq.**

5. **Jury § 82 (NCI4th) — first-degree murder — jury selection — juror accepted by both parties — excused by court**

The trial court did not err in excusing a juror *ex mero motu* where a prospective juror was passed by the State and defendant, asked to speak to the judge, expressed her concern for her two-year-old daughter who was ill with a fever, stated that her child care had only been worked out with some hardship, and the trial judge excused the juror from the panel and called a replacement. N.C.G.S. § 15A-1212(2).

**Am Jur 2d, Jury §§ 265 et seq.**

6. **Evidence and Witnesses § 740 (NCI4th); Criminal Law § 447 (NCI4th) — first-degree murder — impact on victim's family**

The trial court did not err in a first-degree murder prosecution by overruling defendant's objections to statements of the district attorney during jury arguments and the admission of evidence concerning the impact of the murder on the victim's family. Bringing the four-year-old son of the victim and defendant before the jury permitted the jury to better evaluate the State's evidence that defendant was upset because the child was left at home without his mother; testimony that the boy was asleep in bed during the altercation was relevant to show the whereabouts of the members of the household during the altercation; the prosecutor's opening argument regarding the age of the victim and the identity of her survivors

was supported by testimony, without objection from defendant; there was likewise no abuse of discretion in overruling defendant's objections during closing argument; and, in the context of the victim's survivors being present at the altercation in which she died, and two of them trying to stop defendant, the reference to the survivors and defendant's family having to live with defendant's act lends support to a finding that the murder was especially heinous, atrocious or cruel.

**Am Jur 2d, Appeal and Error §§ 797-801, 803.**

**7. Evidence and Witnesses § 351 (NCI4th) — first-degree murder — warrant for assault on a female — admissible**

The trial court did not err in the first-degree murder prosecution of defendant for killing his girlfriend by allowing two of the State's witnesses to testify concerning the issuance of a warrant for assault on a female against defendant in the early morning hours of the day the killing occurred. This testimony establishes intent and the motive of returning to continue the assault and tends to prove premeditation, deliberation, and malice. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Homicide § 311.**

**8. Evidence and Witnesses § 1700 (NCI4th) — first-degree murder — photographs of victim — admissible**

The trial court did not err in a first-degree murder prosecution by admitting autopsy photographs of the victim's body and the testimony of the pathologist concerning these photographs where the trial judge excluded six color photographs as being redundant and "perhaps" inflammatory and the photographs admitted into evidence were illustrative of testimony regarding the nature and number of the victim's wounds and were not excessive in number. Their probative value was not substantially outweighed by any prejudicial effect.

**Am Jur 2d, Evidence § 974.**

**9. Evidence and Witnesses § 2299 (NCI4th) — first-degree murder — whether defendant would have killed without alcohol and cocaine — psychologist's opinion — not admissible**

The trial court did not err in a first-degree murder prosecution by sustaining the State's objection to a clinical psychologist's opinion of whether defendant would have killed

the victim if it were not for the influence of alcohol and cocaine. An expert witness is competent to render an opinion concerning whether a defendant was able to formulate the prerequisite intent in a criminal matter but may not testify to a particular legal conclusion or that a legal standard has or has not been met, at least when the standard is a legal term which carries a specific meaning not readily apparent to the witness. Essentially, defendant was asking the expert to opine as to why the murder was committed. N.C.G.S. § 8C-1, Rule 704.

**Am Jur 2d, Expert and Opinion Evidence § 190.**

10. **Homicide § 694 (NCI4th) — first-degree murder — defense of unconsciousness — instruction not given**

The trial court did not err in a first-degree murder prosecution by refusing defendant's request to instruct the jury on the defense of unconsciousness. There is no evidence that defendant was unconscious at the time of the homicide or immediately thereafter and defendant's own evidence showed that his mental state on the morning of the homicide was caused by the voluntary ingestion of alcohol and drugs. Defendant did not meet his burden of proving the affirmative defense of unconsciousness.

**Am Jur 2d, Homicide § 116.**

11. **Evidence and Witnesses § 1070 (NCI4th) — first-degree murder — flight — sufficiency of evidence to support instruction**

The evidence was sufficient to warrant an instruction on flight in a first-degree murder prosecution where defendant ran from the scene after a neighbor fired his gun, threw down the identifying Redskins jacket he was wearing and disappeared among the bushes, a bloodhound was unsuccessful in tracking him, and he telephoned the police department hours later to turn himself in.

**Am Jur 2d, Evidence §§ 532, 533.**

12. **Criminal Law § 1373 (NCI4th) — first-degree murder — death sentence — not disproportionate**

A sentence of death for a first-degree murder was not disproportionate where the evidence clearly supported the aggravating circumstances that the murder was committed while defendant was engaged in a first-degree burglary and that

STATE v. FISHER

[336 N.C. 684 (1994)]

it was especially heinous, atrocious, or cruel, there was nothing in the record to suggest that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and the sentence was not disproportionate or excessive when compared to similar cases in the pool.

**Am Jur 2d, Criminal Law § 628.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Mills, J., at the 25 January 1993 Criminal Session of Superior Court, Forsyth County. Defendant's motion to bypass the Court of Appeals as to his convictions of assault with a deadly weapon inflicting serious injury and first-degree burglary was allowed 20 September 1993. Heard in the Supreme Court 14 March 1994.

*Michael F. Easley, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Robert T. Hargett, Associate Attorney General, for the State.*

*David F. Tamer for defendant-appellant.*

FRYE, Justice.

On 26 May 1992 a Forsyth County Grand Jury indicted defendant for the 2 April 1992 murder of his girlfriend, Angela Johnson. Defendant was also indicted for first-degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury. In a capital trial, the jury returned a verdict finding defendant guilty of first-degree murder on the basis of malice, premeditation and deliberation and under the felony murder rule with first-degree burglary as the underlying felony. The jury also found defendant guilty of first-degree burglary and assault with a deadly weapon inflicting serious injury. After a capital sentencing proceeding held pursuant to N.C.G.S. § 15A-2000, the jury recommended and the trial court imposed a sentence of death for the first-degree murder conviction. The trial court imposed sentences for the other convictions as follows: fifteen years imprisonment for the first-degree burglary conviction and three years imprisonment for the assault with a deadly weapon inflicting serious injury conviction. Defendant

gave oral notice of appeal on 4 February 1993. An order staying execution was entered by this Court on 12 February 1993.

Defendant brings forward numerous assignments of error. After a careful review of the record, transcript, briefs, and oral arguments of counsel, we conclude that the guilt and sentencing phases of defendant's trial were free from prejudicial error, and that the sentence of death is not disproportionate.

The State presented evidence tending to show the following facts and circumstances. The victim, Angela Johnson, was living at her grandmother's (Josephine Johnson) residence, 2839 Old Greensboro Road in Winston-Salem, at the time of the murder. Angela's mother, Shirley Johnson; Angela's thirteen-year-old daughter, Shemika; and her four-year-old son, Willie Ervin, Jr. (who is also defendant's child), were living there as well.

On 1 April 1992, defendant came to the Johnson residence at about 9:00 p.m. Angela was not at home. He stayed for about three hours, holding Willie Jr. and watching television. Shirley Johnson worked at night and left to go to work at approximately 10:00 p.m. When Angela returned to the house after her mother had gone to work, she and defendant began arguing. Angela ran into her grandmother's room and said that defendant had hit her in the eye. Defendant pushed Angela onto the bed on top of her grandmother and then hit her grandmother while trying to hit Angela. Angela's grandmother called the police.

Soon thereafter, a taxi which had been called earlier by either the victim or defendant arrived at the residence. Angela ran out of the house, while trying to put on her shoes, wearing a T-shirt and jogging pants. Defendant tried to catch her but she got into the taxi and it "pulled off." Angela was crying and her hair was tousled. She had bruises all over her body and her shirt had been torn. Angela went to the Winston-Salem Journal/Sentinel where her mother was working.

Officer T.C. Smoot of the Winston-Salem Police Department received a call at 12:35 a.m. to go to the residence. When he arrived, he began talking to Josephine Johnson about an alleged assault. Angela and her mother arrived later. Officer Smoot noticed that Angela's shirt was torn and her eyes were swollen.

Angela and her mother went to the clerk's office where Angela obtained a warrant charging defendant with assault. A criminal

summons was issued for assault on a female and the police began searching for defendant. Angela and her mother went home but did not go to bed until after 3:00 a.m. There were two twin beds in the bedroom. Angela and Willie Jr. were in one bed and Angela's mother and Shemika were in the other. Angela's grandmother was in a separate room. After they went to sleep, the telephone rang and Angela answered it. She gave the telephone to her mother who recognized the caller as defendant. Angela's mother asked defendant what had happened at the house. He told her that he had not hit Angela or her grandmother.

About ten minutes after the telephone conversation ended, Shirley Johnson heard someone kicking the front door. She jumped up and saw defendant stepping over broken glass from the door and coming into the house. He was wearing a Redskins jacket and had a knife in his hand. He came in the bedroom and told Angela to get up. Angela got up and started running towards, and then out the back door with defendant following her. Angela ran to the front of the house and through the front door with defendant still behind her. Defendant cornered Angela in the living room and began stabbing her in the chest and stomach. Shemika tried to pull him off Angela and she was stabbed on the arm and in the back. Angela's mother began fighting with defendant and he struck her. Defendant dragged Angela out the front door, down the steps, and into the driveway — pulling off her nightgown. He continued to stab, beat, and kick Angela after he dragged her into the street. A next door neighbor, Lucius Simmons, heard the commotion and came to the door. He yelled to defendant to stop. Simmons yelled again, defendant stopped beating Angela and told Simmons to shut up. Simmons shot his gun into the air and defendant ran down the street.

The police arrived at the residence and found Angela lying in Simmons' driveway covered with blood. She had a pulse and appeared to be alive. Officer Smoot saw Shemika and noticed blood down her back and on her pants. She had a three-inch cut on her arm and had been stabbed in the back. The wound in her back was about an inch wide and an inch long. It was gaping open and bleeding. Angela and Shemika were taken by paramedics to the emergency room. Shemika's wounds were cleaned and her lacerations repaired. Angela was unresponsive to emergency medical treatment and was pronounced dead at 7:30 a.m.

An autopsy on Angela was performed by Dr. Patrick Lantz, a forensic pathologist. The autopsy indicated roughly thirty-two stab wounds that varied in depth from superficial to over five inches. According to Dr. Lantz, Angela died of multiple sharp force injuries, including incised wounds and blunt force injuries.

After officers arrived, a bloodhound was brought to the scene to track defendant. The bloodhound tracked defendant's scent for about thirty-five to forty minutes before the dog lost the scent. In the afternoon of 2 April 1992, a telephone call was received at the Winston-Salem Police Department from defendant who told officers where he could be found. Officers were dispatched to the 2500 block of Old Greensboro Road where defendant was standing near a telephone booth. Defendant was arrested and taken to Forsyth Memorial Hospital where he was treated for wounds to his hand as well as other injuries. While waiting in the emergency room, defendant made a voluntary statement to officers. Defendant was admitted to the hospital and when released, he was taken to jail. On 6 April 1992, defendant was questioned by police officers at the police station after being read Miranda rights which he waived.

At trial, defendant testified in his own defense that he had been involved with Angela for seven years and the couple had been living together on a periodic basis. They had one son, Willie Jr. Defendant stated that he had used alcohol, marijuana, and crack cocaine on a regular basis. According to defendant, he and Angela spent the night prior to her death at his father's house. After getting off work at about 3:30 p.m. on 1 April 1992, defendant went home. Defendant's nephew arrived and took him to the store so he could cash his check. At that time, defendant bought beer and malt liquor.

Defendant further testified that upon returning to his residence from the store, he drank no less than four quarts of malt liquor, as well as a quantity of beer. Defendant thereafter went to the store with his sister's boyfriend to buy wine and more beer. During this period of time, he attempted to reach Angela by telephone, but was unsuccessful. Between the hours of 9:00 and 10:00 p.m., defendant's nephew took him to Angela's house where defendant waited for her to return. When Angela returned to the house between 11:00 p.m. and midnight, she and defendant began arguing about the way in which she was caring for their son. Defendant stated that Angela struck him and then they began to fight. After

Angela left the house in a taxi, defendant walked to the home of a friend, Cliff Foster. Upon arriving at Foster's residence, defendant began drinking alcohol and smoking crack cocaine. Defendant called Angela's residence, but her mother would not allow her to come to the telephone. Defendant testified that he continued to smoke crack cocaine after this telephone call.

According to defendant, he left Foster's residence at approximately 4:00 a.m., and walked to Angela's house, carrying a knife that Foster had given him for protection. Upon arriving at her house, he broke the glass in the door, entered the house and began talking to Angela. Defendant remembered Angela coming towards him and trying to take the knife out of his hand but he did not remember stabbing Angela or Shemika. Defendant also stated that he did not remember assaulting Angela with a stick or kicking her. According to defendant, he did not recall anything except Simmons firing a gun, at which time he ran from the scene. After remaining in nearby woods during the day, defendant telephoned the Winston-Salem Police Department for the purpose of turning himself in to the authorities.

Clifton Foster testified that he and defendant smoked four rocks of crack cocaine after 3:00 a.m. on 2 April 1992. After smoking the cocaine, defendant made a telephone call and then left. According to Foster, the knife that defendant had that night did not come from his house.

Defendant introduced evidence from Dr. J. Gary Hoover, a clinical psychologist, that at the time of the murder defendant was functioning "inside an alcohol/crack cocaine black-out and that his emotional or his behavior was directly related to reduced impulse control, reduced his ability to think, plan, organize himself inside what is probable to be an alcoholic black-out enhanced by the use of crack cocaine." Dr. Hoover gave defendant an intelligence test which showed him to be in the below average range of intelligence. Dr. Hoover concluded that defendant was an individual with a substance abuse problem and overtones of chronic depression. Dr. Hoover opined that defendant could not have carried out any sort of concerted intellectually-based plan on 2 April 1992.

The State presented no evidence at the sentencing phase, relying upon the evidence at the guilt-innocence phase of trial.

Defendant called Lieutenant Larry Murphy of the Forsyth County Sheriff's Department who testified that defendant had not caused any disciplinary problems during his incarceration. Defendant also presented several witnesses who testified to his mother's alcohol problem and to the good relationship that defendant had with his son. As his final evidence, defendant introduced a certified criminal record check from the Clerk of Superior Court, Forsyth County showing that defendant had no prior convictions.

Additional evidence will be discussed as it becomes relevant to a fuller understanding of the specific issues raised on appeal.

## JURY SELECTION ISSUES

[1] In defendant's first assignment of error, he contends that the trial court erred in denying his pretrial motion for individual sequestered *voir dire*. Defendant argues that the collective *voir dire* inhibited the candor of the jurors and educated prospective jurors to responses which would allow them to be excused from the panel. This Court has previously rejected similar arguments in *State v. Wilson*, 313 N.C. 516, 330 S.E.2d 450 (1989) (defendant's argument that collective *voir dire* permits prospective jurors to become educated as to responses that would allow them to be excused from the panel rejected as being speculative), and in *State v. Johnson*, 298 N.C. 355, 259 S.E.2d 752 (1979) (defendant's argument that collective *voir dire* made the prospective jurors aware of prejudicial matters and inhibited the candor of jurors rejected as being speculative).

Motions for individual *voir dire* and jury sequestration are addressed to the discretion of the trial judge; his ruling will not be reversed absent an abuse of discretion. *State v. Reese*, 319 N.C. 110, 119, 353 S.E.2d 352, 357 (1987). Defendant has not shown how the answers to *voir dire* prejudiced him in any way or unduly "educated" other jurors on how to be removed from the panel. Accordingly, this assignment of error is rejected.

[2] By his second assignment of error, defendant contends that the trial court erred in denying his pretrial motion seeking entry of an order requiring that prospective jurors complete a two-page questionnaire prior to entering the courtroom for *voir dire* examination.

Regulation of the manner and extent of the inquiry of prospective jurors concerning their fitness rests largely in the discretion

**STATE v. FISHER**

[336 N.C. 684 (1994)]

of the trial court, and such regulation will not be found to constitute reversible error absent a showing of an abuse of discretion. *State v. McLamb*, 313 N.C. 572, 330 S.E.2d 476 (1985); *State v. King*, 311 N.C. 603, 320 S.E.2d 1 (1984). Defendant does not allege that he was in any way prohibited from individually asking prospective jurors the same questions set out in his questionnaire. In sum, he has failed to show that the court abused its discretion or that he was prejudiced by the court's denial of his motion; therefore, this assignment of error is without merit.

[3] In his third assignment of error, defendant contends that the court erred in overruling his objection to the questioning of prospective jurors by the district attorney regarding the felony murder rule. Specifically, defendant argues that this questioning represented an incorrect summary of the law.

During the process of *voir dire* conducted by the district attorney, the following exchange occurred:

MR. BARRETT: . . . Ladies and gentlemen, there's a rule of law and I'm just going to bring it up and make sure you folks can follow it. I'm not going to get into the law of this case. That's the judge's domain. He's the one who instructs you on the law. He tells you what the law is and you're to follow his instructions but I want to bring a rule of law to your attention and make sure you can follow it. It's a rule of law known as the felony murder rule and I don't know if any of you folks have ever heard about it.

The law of this state is that if a person, during the commission of a felony, commits a murder or proximately causes another person's death during the commission of that felony, they're guilty of first degree murder under the felony murder rule. The State doesn't have to show premeditation and deliberation.

All you folks feel like you can follow that law if the State proved to you that this defendant committed another felony and then proximately caused the death, you can find him guilty under that rule? All you folks feel like you can do that?

MR. TAMER: Object to the State's phrasing, Your Honor.

THE COURT: Overruled. Go ahead.

MR. BARRETT: Nobody has any problem with that at all I assume?

(NO RESPONSE.)

Defendant argues that this summary of the law was improper in that it tended to suggest that merely upon a showing that defendant had committed a felony and that he had proximately caused the death of the victim, defendant could be found guilty under the felony murder rule.

> [T]he law is clear in this State that a killing is committed in the perpetration or attempted perpetration of a felony for the purpose of the felony murder rule when there is no break in the chain of events leading from the initial felony to the act causing death. *State v. Rinck*, 303 N.C. 551, 280 S.E.2d 912 (1981). An interrelationship between the felony and the homicide is a prerequisite to the application of the felony murder rule. *State v. Strickland*, 307 N.C. 274, 291-94, 298 S.E.2d 645, 657-58 (1983); *State v. Thompson*, 280 N.C. 202, 185 S.E.2d 666 (1972).

*State v. Avery*, 315 N.C. 1, 26, 337 S.E.2d 786, 800 (1985), *appeal after remand*, 95 N.C. App. 572, 383 S.E.2d 224 (1989), *rev. denied*, 326 N.C. 51, 389 S.E.2d 96 (1990).

Assuming error *arguendo*, defendant has failed to show a clear abuse of discretion and prejudice resulting from the trial court's ruling. *See id.* at 20, 337 S.E.2d at 797. The district attorney made clear in his question that the judge, not he, would be instructing jurors on the law of the case. The trial court in its jury instructions gave a correct instruction on the felony murder rule and defendant has not raised an objection to that instruction. Therefore, this assignment of error is rejected.

[4] By his next assignment of error, defendant argues that the trial court erred in sustaining the district attorney's objections to statements of defense counsel regarding the circumstances of the victim's death and the defendant's consumption of alcohol and controlled substances prior to the victim's death, during the introduction of defense counsel to prospective jurors. Defendant concedes that he was allowed to ask questions regarding attitudes of prospective jurors towards drugs and alcohol. The State argues that the appropriate place for defendant's forecast of evidence

is the opening statement as provided by N.C.G.S. § 15A-1221(a)(4), not prior to *voir dire*. We agree with the State.

> While the exact scope and extent of an opening statement rest largely in the discretion of the trial judge, we believe the proper function of an opening statement is to allow the party to inform the court and jury of the nature of his case and the evidence he plans to offer in support of it. *See generally*, 23 A. [sic] C.J.S., *Criminal Law*, § 1086 (1961).

*State v. Paige*, 316 N.C. 630, 648, 343 S.E.2d 848, 859 (1986) (quoting *State v. Elliott*, 69 N.C. App. 89, 93, 316 S.E.2d 632, 636, *disc. rev. denied, appeal dismissed*, 311 N.C. 765, 321 S.E.2d 148 (1984) ).

The record reflects that defendant presented information regarding the circumstances of the victim's death and defendant's consumption of alcohol and controlled substances during his opening statement. Defendant has failed to show that the trial court abused its discretion; thus, this assignment of error is rejected.

[5] Next, defendant argues that the trial court erred in excusing a juror *ex mero motu* and for no sufficient reason, after the juror had been passed as being qualified by both the State and defendant.

At the beginning of the *voir dire* process on 26 January 1993, prospective juror Elizabeth Lineberger was called into the jury box and seated. After being passed by the State and defendant, Ms. Lineberger was seated with the other individuals that had been passed by both parties. On the second day of *voir dire*, Ms. Lineberger asked to speak to the judge. After excusing the other jurors, the court heard from Ms. Lineberger. While crying, Ms. Lineberger expressed her concern about her two-year-old daughter who was ill with a fever. In addition, Ms. Lineberger stated that her child care had only been worked out with some hardship. The trial judge, finding it to be in the best interest of Ms. Lineberger, the court, the State, and defendant, excused Ms. Lineberger from the panel and called a replacement. After removal of Ms. Lineberger, the court gave the State and defendant an additional peremptory challenge.

N.C.G.S. § 15A-1214(g) provides that:

> If at any time after a juror has been accepted by a party, and before the jury is impaneled, it is discovered that the

juror has made an incorrect statement during voir dire or that some other good reason exists:

(1) The judge may examine, or permit counsel to examine, the juror to determine whether there is a basis for challenge for cause.

(2) If the judge determines there is a basis for challenge for cause, he must excuse the juror or sustain any challenge for cause that has been made.

(3) If the judge determines there is no basis for challenge for cause, any party who has not exhausted his peremptory challenges may challenge the juror.

Any replacement juror called is subject to examination, challenge for cause, and peremptory challenge as any other unaccepted juror.

N.C.G.S. § 15A-1214(g) (1988).

N.C.G.S. § 15A-1212(2) provides that jurors may be challenged for cause if they are incapable by reason of mental or physical infirmity of rendering jury service. The record reflects that Ms. Lineberger's mental state would have hampered her ability to perform her duty as a juror. She was visibly upset about her child's sickness. Ms. Lineberger was in tears while explaining her situation to the trial judge. She stated that she was distracted by her child's sickness and that she was sitting there thinking about it. After carefully reviewing the exchange between the trial court and Ms. Lineberger in the record, we find no error in the trial court's removal of this juror for cause.

## GUILT-INNOCENCE PHASE ISSUES

[6] By four combined assignments of error, defendant argues that the trial court erred in overruling his objections to certain statements of the district attorney during jury arguments and the admission of evidence concerning the impact of this murder on the victim's family. During opening argument, the district attorney made the following statement:

Ladies and gentleman, the events that are about to unfold in front of you are not events to be taken lightly and I know you won't take them in that manner. Angela Johnson was 29 years of age at the time of her death. She is survived by two children and her mother and her grandmother.

STATE v. FISHER

[336 N.C. 684 (1994)]

Defendant contends that this was a play for sympathy which continued when the district attorney had Willie Jr. brought in front of the bar and displayed before the jury during Shemika's testimony. Defendant also objected to questioning of Shemika concerning the whereabouts of Willie Jr. during the altercation in which their mother was killed. He argues that this play for sympathy was "brought to a head" during the closing argument of the sentencing phase when the district attorney told the jury that

> [i]f there is any sympathy to be doled out in this case, ladies and gentlemen, it's for the people he left being and Angela left behind. You've heard these people who had to come up here — his sisters and his brother and break down and cry and have to live with this act the rest of their lives because of what he did and what you heard from Shirley Johnson and Shemika and little Willie Fisher.

Defendant contends that the incidents mentioned above served no other purpose than to inflame the prejudice of the jury in violation of his constitutional rights under the provisions of Article I, Sections 23-27, of the North Carolina State Constitution. The State contends that the statements of the district attorney and the evidence presented were relevant and that no error occurred by their admission.

Generally, all relevant evidence is admissible. N.C.G.S. § 8C-1, Rule 402 (1992). However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 403 (1992). The State's evidence, through Shemika, was that defendant was angry when he found that the victim had left their small son and gone out. When Willie Jr. was brought in front of the jury, Shemika identified him as her younger brother. This in-court identification permitted the jury to see the child and thus better evaluate the State's evidence that defendant was upset because the child was left at home without his mother. Evidence which tends to show the defendant's emotional state at or around the time of the killing tends to shed light on the circumstances surrounding that killing and is relevant and admissible. See State v. Stager, 329 N.C. 278, 321-22, 406 S.E.2d 876, 901 (1991). The transcript reflects that Willie Jr. was "momentarily brought into the courtroom in front of the jury." Under these circumstances, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

STATE v. FISHER

[336 N.C. 684 (1994)]

In addition, Shemika's testimony that Willie Jr. was asleep in bed during the altercation was relevant to show the whereabouts of the members of the household during the altercation.

As to the opening and closing arguments of the district attorney, it is well settled that "control of counsel's argument is largely left to the trial court's discretion." *State v. Robinson*, 330 N.C. 1, 31, 409 S.E.2d 288, 305 (1991) (*citing State v. Whisenant*, 308 N.C. 791, 798, 303 S.E.2d 784, 788 (1983) ); *State v. Covington*, 290 N.C. 313, 328, 226 S.E.2d 629, 640 (1976). Trial counsel are allowed wide latitude in jury arguments and are permitted to argue the facts based on evidence which has been presented as well as reasonable inferences which can be drawn therefrom. *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992); *State v. Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986), *cert. denied*, 465 U.S. 932, 72 L. Ed. 2d 450 (1982). "The trial court has a duty, upon objection, to censor remarks not warranted by either the evidence or the law or remarks calculated to prejudice the jury." *State v. Britt*, 288 N.C. 699, 712, 220 S.E.2d 283, 291 (1970), *appeal after remand*, 291 N.C. 528, 231 S.E.2d 644 (1977).

The prosecutor's statements during opening argument regarding the age of the victim and the identity of her survivors were supported by the testimony of Dr. Patrick Lantz, Shemika and Shirley Johnson, without objection from defendant. Defendant has failed to show prejudice and we conclude that the trial court did not abuse its discretion in overruling defendant's objection to these statements. Likewise, the trial court did not abuse its discretion in overruling defendant's objections during closing argument in the sentencing phase of trial.

At the sentencing phase, the trial court submitted the aggravating circumstance, "the capital felony was especially heinous, atrocious, or cruel," which the jury found. The victim's survivors were present at the time of the altercation between her and defendant which led to her death. Two of the victim's survivors even attempted to stop defendant from killing her. In this context, the prosecutor's reference to the victim's survivors, as well as to the members of defendant's family having to live with defendant's act for the rest of their lives, lends support to a finding that the murder was especially heinous, atrocious, or cruel. Defendant argues that the prosecutor's remarks were akin to victim impact statements which the U.S. Supreme Court held were inadmissible in *Booth*

*v. Maryland,* 482 U.S. 496, 96 L. Ed. 2d 440 (1987), *overruled by Payne v. Tennessee,* 501 U.S. 808, 115 L. Ed. 2d 720 (1991), *reh'g denied,* 501 U.S. 1277, 115 L. Ed. 2d 1110 (1991). However, in *Payne v. Tennessee,* the Court held that "a state may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Payne,* 501 U.S. at 827, 115 L. Ed. 2d at 736. For the foregoing reasons, this assignment of error is rejected.

[7] By his next assignment of error, defendant contends that the trial court erred in allowing two of the State's witnesses to testify concerning the issuance of a warrant for assault on a female against defendant in the early morning hours of 2 April 1992. Over objection, Shirley Johnson testified that she took Angela to the clerk's office to obtain a warrant against defendant for beating Angela. Subsequently, Officer T.C. Smoot testified, over objection, that he went to the Johnson residence after receiving a report of an assault. He testified that he saw Angela and that she looked as if she had sustained a recent injury. Officer Smoot also stated that he met Angela at the clerk's office later that night for the purpose of obtaining a warrant against defendant. Defendant contends that this evidence was not admissible.

N.C.G.S. § 8C-1, Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. N.C.G.S. § 8C-1, Rule 404(b) (1992).

In *State v. Stager,* 329 N.C. at 321-22, 406 S.E.2d at 901, this Court held that

> testimony that the defendant was calm and was not crying described her emotional state shortly after her husband was killed, based upon the witnesses' observations of her demeanor at that time. Such evidence, and the evidence that the defendant disposed of her husband's personal effects the day after his funeral, amounted to evidence tending to shed light upon the circumstances surrounding the killing in this case and, thus, are relevant and admissible. N.C.G.S. § 8C-1, Rules 401 and 402 (1988).

STATE v. FISHER

[336 N.C. 684 (1994)]

In the instant case, evidence regarding the issuance of a warrant for defendant's arrest in the hours immediately preceding the murder tends to shed light on defendant's emotional state at or around the time of the killing and the circumstances surrounding that killing; thus, it is relevant and admissible. *See id.* This testimony establishes intent and the motive of returning to continue the assault and tends to prove premeditation, deliberation, and malice. For the foregoing reasons, this assignment of error is rejected.

[8] Defendant next argues that the trial court erred in admitting into evidence, over his objection, certain 8x10 color autopsy photographs of the victim's body and the testimony of the pathologist concerning these photographs. The photographs were of the victim's upper and lower body indicating the multiple stab wounds. Defendant contends that these photographs were not relevant and were inflammatory. Defendant argues that the photographs were not relevant because he proffered a stipulation that the identity of the victim was Angela Johnson, the decedent's death was caused by multiple stab wounds, and he was the individual who inflicted such stab wounds upon the decedent. However, defendant conceded in oral argument that the State rejected the proffered stipulation and it was not before the jury at any time during the trial.

The State argues that the photographs were admissible as illustrative of the pathologist's testimony with regard to the condition of the victim's body and the wounds it had sustained and as evidence of malice, premeditation and deliberation. We agree with the State.

This Court has stated that "[p]hotographs of homicide victims are admissible at trial even if they are 'gory, gruesome, horrible, or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury.'" *State v. Thompson,* 328 N.C. 477, 491, 402 S.E.2d 386, 394 (1991) (quoting *State v. Murphy,* 321 N.C. 738, 741, 365 S.E.2d 615, 617 (1988)). "Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree." *State v. Hennis,* 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988).

*State v. Rose,* 335 N.C. 301, 319, 439 S.E.2d 518, 528 (1994). Admissible evidence may be excluded, however, under Rule 403 of the

North Carolina Rules of Evidence if the probative value of such evidence is substantially outweighed by its prejudicial effect. "Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in light of the illustrative value of each . . . lies within the discretion of the trial court." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (*citing State v. Sledge*, 297 N.C. 227, 254 S.E.2d 579 (1979)).

Upon objection by defendant to the admission of these photographs, a *voir dire* was held. At the close of the *voir dire* the trial judge excluded six color photographs as being redundant and "perhaps" inflammatory and admitted thirteen others. The photographs admitted into evidence were illustrative of testimony regarding the nature and number of the victim's wounds and were not excessive in number. *See State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118, *cert. denied*, --- U.S. ---, 126 L. Ed. 2d 341 (1993), *reh'g denied*, --- U.S. ---, 126 L. Ed. 2d 707 (1994); *State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). The photographs, and the pathologist's testimony concerning them, were also admissible on the issue of premeditation and deliberation. *See State v. Hennis*, 323 N.C. at 284, 372 S.E.2d at 526 (photographs may be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree). After examining the photographs, we agree with the trial court that their probative value was not substantially outweighed by any prejudicial effect. Therefore, the trial court did not abuse its discretion in refusing to exclude them.

[9] By his next assignment of error, defendant contends that the trial court erred in sustaining the State's objection to a clinical psychologist's opinion of whether defendant would have killed the victim if it were not for the influence of alcohol and cocaine. Defendant offered the testimony of Dr. J. Gary Hoover regarding his examination of defendant. During Dr. Hoover's testimony, the following exchange occurred:

> Q. Based upon the standardized test which you administered, clinical interview you conducted, as well as other information made available to you in the course of your evaluation, do you have an opinion as to whether or not Willie Fisher would

have killed Angela Johnson but for the influence of alcohol and cocaine?

A. It's inconceivable—

MR. BARRETT: —Objection.

THE COURT: Sustained.

MR. BARRETT: Move to strike that.

THE COURT: Members of the jury, disregard that.

Q. Do you have such an opinion?

A. Yes.

Q. What is your opinion?

MR. BARRETT: Objection.

THE COURT: Sustained.

Out of the presence of the jury, Dr. Hoover's answer for the record was as follows:

A. Given his—given what I know about Mr. Fisher, both in terms of interview, testing, and what appears to be the case with regard to substance abuse, it's inconceivable to me that he would kill that which he appeared to love most.

Q. And that would have been Angela Johnson?

A. That's correct.

Expert testimony is admissible under North Carolina Rule of Evidence 702, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C.G.S. § 8C-1, Rule 702 (1992).

An expert witness is competent to render an opinion concerning whether a defendant was able to formulate the prerequisite intent in a criminal matter. *State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988), *appeal after remand*, 327 N.C. 405, 394 S.E.2d 811 (1990). An expert witness may not, however, testify to a par-

ticular legal conclusion or that a legal standard has or has not been met, at least when the standard is a legal term which carries a specific meaning not readily apparent to the witness. *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985).

Under Rule 704, "[t]estimony in the form of an opinion or inference is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.C.G.S. § 8C-1, Rule 704. However, according to the advisory committee note to Rule 704:

> "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurance against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpfuls of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. . . ."

N.C.G.S. § 8C-1, Rule 704 advisory committee's note (citations omitted).

Defense counsel asked Dr. Hoover if he had an opinion as to the ability of defendant to formulate and carry out a plan at or about five a.m. on 2 April 1992. This was a proper question, and the witness was permitted to respond that "his state coupled with his personality organization, his general intellectual level, rendered him to be very difficult to carry out any sort of concerted intellectually based plan." On redirect examination, defense counsel asked Dr. Hoover if he had an opinion as to whether defendant would have killed the victim "but for the influence of alcohol and cocaine?" We disagree with defendant's contention that the opinion called for by this question was not substantially different from an opinion regarding a defendant's ability to form a specific intent or his capacity to premeditate or deliberate. Essentially, defendant was asking Dr. Hoover to opine as to why the murder was committed. We are not convinced that Dr. Hoover was in any better position than the jury to make this determination. Therefore, we conclude that the trial court did not err in refusing to admit this testimony.

[10] In his next assignment of error, defendant contends that the trial court erred in refusing his request to instruct the jury on

the defense of unconsciousness. "The rule in this jurisdiction is that where a person commits an act without being conscious thereof, the act is not a criminal act even though it would be a crime if it had been committed by a person who was conscious." *State v. Jerrett*, 309 N.C. 239, 264, 307 S.E.2d 339, 353 (1983) (citations omitted). However, unconsciousness as a result of voluntary ingestion of alcohol or drugs will not warrant the instruction requested here by defendant. *State v. Boone*, 307 N.C. 198, 209, 297 S.E.2d 585, 592 (1982); *State v. Williams*, 296 N.C. 693, 701, 252 S.E.2d 739, 744 (1979).

First, there is no evidence that defendant was unconscious at the time of the homicide or immediately thereafter. Defendant gave a detailed statement to police upon his treatment at the hospital on the day of the murder. His testimony at trial itself regarding the altercation between himself and Angela which led to her death as well as his testimony regarding the assault earlier that evening all belie unconsciousness. Secondly, defendant's own evidence showed that his mental state on the morning of the homicide was caused by the voluntary ingestion of alcohol and drugs. Defendant testified that he smoked crack cocaine and drank beer excessively in the hours leading up to the murder. Although defendant contends that there is no evidence that this conduct was "an effort to steel himself for the preparation of a crime," there is also no evidence that his drinking and smoking were anything other than voluntary acts. We conclude that defendant has not met his burden of proving the affirmative defense of unconsciousness; therefore, the trial court did not err in refusing to give the instruction.

[11] Finally, defendant contends that the trial judge erroneously instructed the jury on the issue of defendant's flight as evidence of his guilt. Over objection, the trial judge instructed the jury as follows:

> Members of the jury, the State contends that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt. This circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation; therefore, it must not be considered by you as evidence of premeditation or deliberation.

According to defendant, there was insufficient evidence that he engaged in flight to warrant this instruction. In *State v. Thompson*, 328 N.C. 477, 489-90, 402 S.E.2d 386, 392 (1991), this Court held that in order to justify an instruction on flight there must be some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged. Mere evidence that the defendant left the scene of the crime is not enough to support an instruction on flight. There must also be evidence that the defendant took steps to avoid apprehension. *Id.*

After Simmons fired his gun, defendant began running from the scene. He threw down the identifying Redskins jacket he was wearing and disappeared among the houses. A bloodhound brought to the scene was unsuccessful in tracking defendant. Some hours later, defendant telephoned the Winston-Salem Police Department to turn himself in. We conclude that this evidence was sufficient to warrant the instruction given by the trial court. Accordingly, this assignment of error is rejected.

### PROPORTIONALITY

[12] Having found no prejudicial error in the guilt-innocence and sentencing phases of defendant's trial, we are required by statute to review the judgment and sentence to determine whether: (1) the record supports the jury's finding the aggravating circumstances on which the court based its sentence of death, (2) the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (3) the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and defendant. N.C.G.S. § 15A-2000(d)(2) (1988); *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518 (1994).

In this case, the jury found the two aggravating circumstances which were submitted: "the capital felony was committed while the defendant was engaged in the commission of the crime of first degree burglary" and "the capital felony was especially heinous, atrocious or cruel." Defendant makes no argument that the record does not support the jury's finding of either of these aggravating circumstances. The evidence presented at trial showed that defendant broke down the door and entered the Johnson's home around 3:00 a.m. on 2 April 1992 and brutally stabbed Angela in front of her daughter and her mother who tried to stop him. Defendant then proceeded to drag Angela out of the front door and into the driveway while continuously stabbing, hitting, and kicking her.

This evidence clearly supports the jury's finding of each of these aggravating circumstances.

Further, there is nothing in the record that suggests that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We thus turn to our final statutory duty of proportionality review.

In conducting proportionality review, "[we] determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases." *State v. Brown*, 315 N.C. 40, 70, 337 S.E.2d 808, 829 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). We compare similar cases in a pool consisting of:

> *all cases* arising since the effective date of our capital punishment statute, 1 June 1977, which have been tried as capital cases and reviewed on direct appeal by this Court and in which the jury recommended death or life imprisonment or in which the trial court imposed life imprisonment after the jury's failure to agree upon a sentencing recommendation within a reasonable period of time.

*State v. Syriani*, 333 N.C. at 400, 428 S.E.2d at 146 (1993) (quoting *State v. Williams*, 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, *reh'g denied*, 464 U.S. 1004, 78 L. Ed. 2d 704 (1983)). However, this Court is not required to give a citation to every case in the pool of similar cases used for comparison. *State v. Williams*, 308 N.C. at 81, 301 S.E.2d at 356. The Court's consideration of cases in the pool focuses on those cases "which are roughly similar with regard to the crime and the defendant. . . ." *Syriani*, 333 N.C. at 401, 428 S.E.2d at 146 (quoting *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985)).

Characteristics distinguishing the present case include (1) the murder of a girlfriend of seven years who was the mother of defendant's child; (2) an assault on the victim by defendant in the hours preceding the murder; (3) the brutality of the murder—roughly thirty-two stab wounds, a broken cheek and broken jaw; (4) the fact that the murder occurred in front of family members of the victim in their home while the victim and defendant's young son were in the bedroom sleeping; (5) the stabbing of the victim's

daughter who attempted to assist her mother; and (6) the continued pursuit of the victim by dragging her outside of the house while continuously stabbing, hitting, and kicking her.

The jury found the two aggravating circumstances submitted, that the capital felony was committed while defendant was engaged in a burglary and that the capital felony was especially heinous, atrocious or cruel. The jury found two statutory mitigating circumstances, the defendant had no significant history of prior criminal activity and the capital felony was committed while the defendant was under the influence of mental or emotional disturbance. It found six nonstatutory mitigating circumstances: that defendant voluntarily surrendered to law enforcement officers; that defendant freely and voluntarily admitted to law enforcement officers responsibility for the death; that defendant's conduct while in custody at Forsyth County Jail was without disciplinary problems; that defendant voluntarily participated in Narcotics Anonymous while confined to the Forsyth County Jail; that defendant has expressed remorse for his action; and that by reason of an abusive father and alcoholic mother the defendant has a passive dependent personality.

Of the cases in which this Court has found the death penalty disproportionate, only two included the "especially heinous, atrocious, or cruel" aggravating circumstance. *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983). Neither requires a finding that the death penalty is disproportionate in this case.

In *Stokes*, defendant and three young men robbed the victim's place of business. During the robbery one of the assailants severely beat the victim about the head, killing him. *Stokes*, 319 N.C. at 3, 352 S.E.2d at 654. The facts of *Stokes* are distinguishable from the present case. First, the defendant in *Stokes* was seventeen years old; defendant in this case is thirty-two years old. Second, the defendant was convicted on the felony murder theory, whereas in the present case, defendant was convicted on the basis of felony murder and on the basis of malice, premeditation and deliberation. There was also no evidence in *Stokes* showing who was the ringleader of the robbery, or that the defendant deserved a death sentence any more than did an older confederate who received a life sentence. In this case, defendant was the sole perpetrator of this brutal murder.

As in the present case, the jury in *Stokes* found the statutory mitigating circumstances that the defendant had no significant history of prior criminal activity and that the murder was committed while the defendant was under the influence of mental or emotional disturbance. However, the jury found only one aggravating circumstance in *Stokes*, that the murder was especially heinous, atrocious or cruel, whereas in the present case the jury also found that the murder was committed while defendant was engaged in the commission of the crime of first-degree burglary. A more important distinction between these cases is that in *Stokes*, the jury found that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. In the instant case, this mitigating circumstance was submitted to the jury and rejected.

In *Bondurant*, the defendant shot the victim while they were riding together in a car. *Bondurant*, 309 N.C. at 677, 309 S.E.2d at 173. The Court "deem[ed] it important in amelioration of defendant's senseless act that immediately after he shot the victim, he exhibited a concern for [the victim's life] and remorse for his action by directing the driver of the automobile to the hospital." *Id.* at 694, 309 S.E.2d at 182. He then went inside to secure medical treatment for the victim. In the present case, by contrast, the defendant followed the infliction of one potentially fatal wound with another. He resisted physical attempts to stop him from the victim's daughter and mother. He also ignored the shouts of a neighbor for him to stop and did so only after the neighbor fired gunshots into the air, at which time he fled the scene. Defendant's later expressions of remorse are not comparable to the actions taken by the defendant in *Bondurant*.

This Court has affirmed the death penalty in several factually similar cases where the jury found the murder to be especially heinous, atrocious or cruel. *See Syriani*, 333 N.C. 350, 428 S.E.2d 118 (defendant stabbed his wife while she was in an automobile with their ten-year-old son who tried to stop him); *State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110 (1984), *cert. denied*, 471 U.S. 1009, 851 L. Ed. 2d 169 (1985) (defendant beat his mother-in-law to death with a cast iron skillet inflicting multiple wounds to her head, neck and shoulders); *State v. Boyd*, 311 N.C. 408, 319 S.E.2d 189 (1984), *cert. denied*, 471 U.S. 1030, 84 L. Ed. 2d 324 (1985) (defendant killed his estranged girlfriend by stabbing her repeated-

ly in front of her mother and daughter). We find these cases to be most comparable to the one at hand.

After a thorough review of the transcript, record on appeal, the briefs of both parties, and the oral arguments of counsel, we find that the record fully supports the jury's written findings in aggravation in the death of the victim. We further conclude that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. We hold that defendant received a fair trial and capital sentencing proceeding, free of prejudicial error. After comparing this case to similar cases in the pool, we cannot hold as a matter of law that the sentence of death is disproportionate or excessive.

NO ERROR.