STATE OF NORTH CAROLINA v. JOHNNY RAY DAUGHTRY

No. 412A93

(Filed 28 July 1995)

**1. Appeal and Error § 150 (NCI4th)— constitutional issue— failure to raise in trial court**

Where defendant did not make an argument at trial for exclusion of his incriminating statement to the police based on the Fourth Amendment to the U.S. Constitution, he may not properly present an argument based thereon in the Supreme Court.

**Am Jur 2d, Evidence § 752.**

**2. Evidence and Witnesses § 1240 (NCI4th)— incriminating statement—defendant not in custody—*Edwards v. Arizona* inapplicable**

Defendant's freedom of movement was not restrained during his interview by the police so as to render him in custody for Fifth Amendment purposes where defendant testified that he knew he was free to leave, even when the door to the interview room was shut; defendant was never handcuffed or frisked; at most the police patted him down before the interview to make sure he was

unarmed; and the officers never threatened defendant, raised their voices, or ordered defendant to do anything. When defendant asked for a lawyer, a reasonable person would have felt free to leave, the prohibitions of *Edwards v. Arizona*, 451 U.S. 477, which established the custodial interrogation must cease when an accused requests an attorney and may not be resumed by police officers without an attorney present, thus did not apply, and defendant's rights were not violated when an officer told him he could continue talking to the officers without an attorney if he wished.

**Am Jur 2d, Criminal Law §§ 788-797.**

**What constitutes "custodial interrogation" within rule of *Miranda v. Arizona* requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.**

**3. Constitutional Law § 344 (NCI4th)— right to presence at all trial stages—jury venire—members borrowed for another trial—no violation**

Defendant's right to be present at every stage of his trial was not violated when the court divided the jury venire into four groups of twelve persons each; the court allowed the persons on panels three and four to be borrowed for a trial in another courtroom; on the second day of voir dire in defendant's trial, the court separated the persons on panels three and four according to whether they had been selected to serve on the jury in the other case, placing those who had been selected at the end of the line; and one person from panel four who had not been selected to serve at the other trial sat on defendant's jury.

**Am Jur 2d, Criminal Law § 695.**

**4. Jury § 227 (NCI4th)— capital trial—jury selection—death penalty views—excusal for cause despite rehabilitation testimony**

Where, in response to questions by the prosecutor and the court in a capital trial, one prospective juror indicated on three separate occasions that she either would not or could not impose the death penalty, and a second prospective juror stated that under no circumstances could he vote to impose death, the trial court acted within its discretion by excusing these jurors for cause even though both stated during rehabilitation that they

could "fairly consider" both life imprisonment and death as possible punishments, since the trial court properly could have determined that their rehabilitation testimony reflected a desire to do their duty and to follow the court's instructions rather than an actual ability to sentence defendant to death.

**Am Jur 2d, Jury § 279.**

### 5. Jury § 226 (NCI4th)— capital trial—jury selection—death penalty views—excusal for cause without rehabilitation

The trial court did not abuse its discretion in excusing a prospective juror for cause based on her death penalty views without allowing defendant an opportunity to rehabilitate her where the juror's responses to questions from both the prosecution and the trial court established that she would not vote to impose the death penalty under any circumstances, and defendant failed to show that further questioning would likely have produced different testimony.

**Am Jur 2d, Jury § 279.**

### 6. Evidence and Witnesses § 1694 (NCI4th)— photographs of murder victim's body—admissibility

The trial court did not err by admitting for illustrative purposes four photographs of a murder victim's naked body at the crime scene where the photographs depicted the body from four different angles as examined by an SBI agent; three also revealed bloodstain patterns about which a serologist testified; and the number of photographs was not excessive.

**Am Jur 2d, Homicide § 417.**

**Admissibility in evidence of enlarged photographs or photostatic copies. 72 ALR2d 308.**

### 7. Evidence and Witnesses § 1659 (NCI4th)— photographs— substantive or illustrative evidence—instruction not plain error

Any error in the trial court's instruction that the jury in a murder trial could consider certain photographs "as evidence of facts that they illustrate" when some photographs were admitted for illustrative purposes only was not plain error given the physical and circumstantial evidence, as well as defendant's confession, since any error concerning whether photographs constituted sub-

stantive or illustrative evidence probably did not affect the jury's deliberations or decision.

**Am Jur 2d, Evidence §§ 960, 961.**

**8. Evidence and Witnesses § 2211 (NCI4th)— DNA test results—expert testimony—tests performed by another— right of confrontation—evidence rules not violated**

The trial court did not err by allowing an SBI agent, who was an expert in DNA analysis and molecular genetics, to testify about the results of DNA testing on blood samples found on pants worn by defendant on the night of a murder and the statistical significance thereof based upon DNA analysis performed by another agent in the SBI unit under his direct supervision since the DNA report prepared by the other agent was reliable and could be used by the witness to form his opinions. The witness's DNA testimony did not violate defendant's Confrontation Clause rights since the witness was vigorously cross-examined about the DNA testing procedures at the SBI and about his opinions. Nor did the testimony violate N.C.G.S. § 8C-1, Rules 702, 703 or 403.

**Am Jur 2d, Evidence § 574.**

**Admissibility of DNA identification evidence. 84 ALR4th 313.**

**9. Evidence and Witnesses § 2210 (NCI4th)— expert testimony—bloodstain patterns—manner of victim's murder**

The trial court did not err by allowing an expert in forensic serology and bloodstain pattern interpretation to state opinions about the position of a murder victim's body when she was struck by a blunt object and the number and force of blows inflicted upon her based upon his examination of the bloodstain patterns found on the ground, porch steps at the crime scene, and a log discovered on a woodpile near the body. The testimony was competent and relevant to show the manner of the victim's murder, and its probative value was not outweighed by the danger of unfair prejudice.

**Am Jur 2d, Expert and Opinion Evidence § 300.**

**Admissibility, in criminal prosecution, of expert opinion evidence as to "blood splatter" interpretation. 9 ALR5th 369.**

**10. Appeal and Error § 155 (NCI4th)— admission of testimony—failure to preserve for appellate review**

Defendant failed to preserve an assignment of error to the admission of testimony for appellate review under N.C. R. App. P. 10(b)(2) where the portion of a witness's testimony about which defendant complains was neither mentioned in defendant's motion to exclude nor objected to at trial. Defendant also waived appellate review under N.C. R. App. P. 10(c)(4) by failing specifically and distinctly to contend that the error amounts to plain error.

**Am Jur 2d, Appellate Review § 614.**

**11. Evidence and Witnesses §§ 1009, 1010 (NCI4th)— abuse by defendant—statements made by murder victim—residual exception to hearsay rule**

Statements made by a murder victim to a witness and in a letter to defendant concerning abuse she suffered from defendant were properly admitted in defendant's murder trial under the residual exception to the hearsay rule set forth in N.C.G.S. § 8C-1, Rule 804(b)(5). The trial court properly found that the statements were probative of a material fact in that they were evidence of motive, identity and intent. Error by the trial court in failing to make findings of fact to support its conclusion that the statements possessed the requisite trustworthiness was harmless beyond a reasonable doubt where the record sustains the court's conclusion and contains overwhelming evidence of defendant's guilt, including his confession, DNA test results, and blood-type matching.

**Am Jur 2d, Evidence §§ 683-685.**

**12. Homicide § 659 (NCI4th)— instructions—voluntary intoxication—specific intent to kill—omission of proposed final mandate**

The trial court in a first-degree murder case did not shift the burden of proof by omitting defendant's proposed "final mandate" from the instructions on voluntary intoxication as it related to defendant's ability to form a specific intent to kill since the trial court gave the substance of the instruction defendant requested, and the omission of the "final mandate" could not have misled the jury about the burden of proof, especially considering the court's

explicit instructions about reasonable doubt and the State's burden of proof.

**Am Jur 2d, Homicide §§ 483, 508, 517.**

**13. Rape and Allied Offenses §§ 28, 164 (NCI4th)— first-degree sexual offense—diminished capacity no defense**

The trial court did not err by failing to instruct on diminished capacity as that defense related to a charge of first-degree sexual offense since first-degree sexual offense is not a specific intent crime, and diminished capacity is thus not a defense to such crime.

**Am Jur 2d, Rape § 37.**

**14. Constitutional Law § 342 (NCI4th)— failure of record to show defendant's presence at trial—absence not assumed**

It will not be assumed that defendant was absent from his capital trial on several occasions where the court reporter did not consistently record defendant's presence while court was in session, but the transcript does not indicate, and defendant has not shown, that he was absent from the trial.

**Am Jur 2d, Criminal Law §§ 697, 906.**

**15. Criminal Law § 1309 (NCI4th)— capital sentencing—admissibility of evidence—Rule 403 balancing test inapplicable**

The trial court was not required to perform the Rule 403 balancing test in deciding whether to permit the State to introduce a photograph in a capital sentencing proceeding because the Rules of Evidence do not apply in sentencing proceedings; any evidence the court deems relevant to sentence may be introduced at this stage; and the State must be permitted to present any competent, relevant evidence which will substantially support imposition of the death penalty. N.C.G.S. § 8C-1, Rule 1101(b)(3); N.C.G.S. § 15A-2000(a)(3).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**16. Criminal Law § 1314 (NCI4th)— capital sentencing—photograph of victim's body—relevancy to heinous, atrocious, or cruel aggravating circumstance**

The trial court did not err by admitting in a capital sentencing proceeding an eight-by-ten-inch color photograph of the murder

victim's naked body, from the rear, that showed a stick protruding from the body and injuries to the rectal area which had been excluded from the guilt phase because the record supports the court's finding that the photograph was relevant to the especially heinous, atrocious, or cruel aggravating circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599.**

17. **Criminal Law § 1314 (NCI4th)— capital sentencing— remorse shown by defendant—exclusion of evidence— harmless error**

The trial court in a capital sentencing proceeding erred by refusing to permit defendant's psychiatric expert to answer questions as to whether he had seen indications of remorse on defendant's part and what he had observed of defendant's reaction to the victim's death since this evidence was relevant to the nonstatutory mitigating circumstance that defendant exhibited remorse within a short time following the crime. Assuming that this error had constitutional implications, it was nevertheless harmless beyond a reasonable doubt where the jury did not find the mitigating circumstance regarding defendant's remorse even though other uncontroverted evidence thereof was presented at the sentencing hearing.

**Am Jur 2d, Criminal Law §§ 598, 599.**

18. **Criminal Law § 463 (NCI4th)— capital sentencing—prosecutor's closing argument—statements showing cruelty of killing**

The trial court did not err by (1) overruling defendant's objections to the prosecutor's jury argument in a capital sentencing proceeding that the evidence supported inferences that the victim was alive as defendant bludgeoned her, the victim was alive when defendant inserted a stick in her rectum, and defendant twisted the stick in the rectum as he inserted it, and (2) failing to intervene during the portion of the argument in which the prosecutor gave a chronological summary of the crime, since the evidence supported the arguments, and the arguments did not improperly encourage the jury to find the murder especially heinous, atrocious, or cruel simply on the basis of the sex offense but sought to give the jury a complete picture of the merciless nature of the crime and urged the jury to find this aggravating circumstance on the basis of the overwhelming brutality of the killing.

**Am Jur 2d, Criminal Law §§ 588 et seq.**

**19. Criminal Law § 1339 (NCI4th)— capital sentencing—aggravating circumstances—heinous, atrocious, or cruel murder—murder during another felony—separate evidence supporting both circumstances**

Separate evidence existed in a capital sentencing proceeding to support the trial court's submission of both the aggravating circumstance that the murder was especially heinous, atrocious, or cruel and the aggravating circumstance that it was committed while defendant was engaged in the commission of a sex offense where a reasonable juror could have found the especially heinous, atrocious, or cruel circumstance based on the medical examiner's testimony about the victim's severe blunt-trauma wounds, and a reasonable juror could find that the murder was committed while defendant was engaged in the commission of a sex offense based on evidence that multiple external abrasions and lacerations existed around the victim's rectum and vagina and that some object had been inserted into the rectum or the vagina, causing external lacerations.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

**20. Criminal Law § 1343 (NCI4th)— capital sentencing—aggravating circumstances—consideration of separate evidence—sufficiency of instruction**

In a capital sentencing proceeding in which the trial court submitted the aggravating circumstances that the murder was especially heinous, atrocious, or cruel and that it was committed while defendant was engaged in a sex offense, the trial court's instruction that the jury should not "focus on the sexual offense but instead focus on the manner of [the victim's] killing" when considering the heinous, atrocious, or cruel aggravating circumstance was sufficient to prohibit the jury from considering the same evidence in support of both circumstances submitted and was not plain error.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that mur-**

der was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.

**21. Criminal Law § 1355 (NCI4th)— capital sentencing—mitigating circumstance—no significant criminal history—submission not required**

The trial court could properly determine that no reasonable juror in this capital sentencing proceeding could conclude that defendant's criminal history was insignificant and thus did not err in failing to submit the mitigating circumstance that defendant had no significant history of prior criminal activity where defendant's prior criminal history included numerous beatings of the victim, an incident in which defendant shot an acquaintance in the leg, a conviction for driving under the influence, and a guilty plea to assault inflicting serious injury in an altercation in which defendant hit a man in the head with a large stick, causing a concussion and breaking the man's jaw and ribs.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that defendant was previously convicted of or committed other violent offense, had history of violent conduct, posed continuing threat to society, and the like—post-*Gregg* cases. 65 ALR4th 838.**

**22. Criminal Law § 1362 (NCI4th)— capital sentencing—mitigating circumstance—age of defendant—submission not required**

The trial court properly declined to submit defendant's age as a mitigating circumstance in this capital sentencing proceeding, although defendant contended that the evidence showed his emotional age to be younger than his chronological age of twenty-seven at the time of the crime, where the evidence showed that defendant completed high school and that his general knowledge was "sufficient for most purposes"; he has average intelligence, with no major disturbance of mood or thinking, and was gainfully employed prior to his arrest; and the evidence did not link defendant's immaturity and impulsive behavior to his age but showed that those traits stemmed from a personality disorder and dysfunctional family life.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

23 **Criminal Law § 1363 (NCI4th)— capital sentencing—nonstatutory mitigating circumstances—support of child—sole supporter of victim—insufficiency of evidence**

The evidence did not require the trial court to submit the nonstatutory mitigating circumstances that "defendant had provided child support for his child by another woman for several years" and "defendant was the sole supporter of [the victim] while they were living together" where the evidence showed only that the woman with whom defendant conceived a child received government support, and it also showed that defendant provided support to the victim but failed to show that he was her "sole supporter."

**Am Jur 2d, Criminal Law §§ 598 et seq.**

24. **Criminal Law § 1363 (NCI4th)— capital sentencing— request for nonstatutory mitigating circumstance—redundancy of alcohol dependence—insufficient evidence of marijuana dependence**

The trial court properly ruled that the portion of a requested mitigating circumstance referring to the effect of defendant's alcohol dependence upon his judgment was subsumed within the submitted circumstance that "defendant has a history of chronic alcohol dependency and abuse." Furthermore, the evidence was insufficient to require submission of the portion of the requested instruction referring to marijuana dependence where a psychiatrist testified that defendant had abused marijuana but did not state that he was dependent upon it.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

25. **Criminal Law § 1363 (NCI4th)— capital sentencing— requested mitigating circumstance—subsumption by circumstances submitted**

The trial court did not err by refusing to submit the mitigating circumstance that "defendant never developed a normal father-son relationship with his father" because it was subsumed within submitted mitigating circumstances that "defendant's mental and/or emotional disturbances were caused in part by the emotional instability of his family" and "defendant had grown up in a dysfunctional family with much discord between his parents and with both parents being 'workaholics' with limited time for their children."

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**26. Criminal Law § 1363 (NCI4th)— capital sentencing—mitigating circumstance—continued remorse by defendant—failure to submit as harmless error**

The trial court erred by failing to submit defendant's requested mitigating circumstance that within a short time following the crime defendant exhibited remorse and sorrow "and has continued to do so" where defendant cried on the stand when asked on direct examination about his reaction to the victim's death and the sexual offense committed against her. However, even if this error was of constitutional dimension, it was harmless beyond a reasonable doubt where the jury saw defendant on the stand and heard the evidence relevant to this circumstance, and the court instructed on the "catchall" circumstance, which no juror found to exist.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**27. Criminal Law § 1363 (NCI4th)— capital sentencing—mitigating circumstance—no attempt to flee—failure to submit as harmless error**

The trial court's failure to submit defendant's requested mitigating circumstance that "defendant at no time resisted arrest or attempted to flee from Johnston County" was harmless error where the jury knew from the evidence that defendant cooperated with the police and never tried to escape from the police station, and the trial court submitted the "catchall" mitigating circumstance.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**28. Criminal Law § 1334 (NCI4th)— aggravating circumstances—notice not required**

The trial court did not commit constitutional error by denying defendant's motion for disclosure of the aggravating circumstances upon which the State intended to rely.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

**29. Criminal Law § 1300 (NCI4th)— capital case—guilt and sentencing phases—separate juries not required**

The trial court did not err by denying defendant's motion for separate juries for the guilt and sentencing phases of his capital trial.

**Am Jur 2d, Criminal Law §§ 609 et seq., 628.**

STATE v. DAUGHTRY

[340 N.C. 488 (1995)]

Comment Note.—Effect of abolition of capital punishment on procedural rules governing crimes punishable by death—post-*Furman* decisions. 71 ALR3d 453.

### 30. Jury § 235 (NCI4th)— death-qualified jury—constitutionality

The trial court did not commit constitutional error by denying defendant's motion to prohibit death-qualifying questions during voir dire.

Am Jur 2d, Jury §§ 189 et seq.

### 31. Jury § 261 (NCI4th)— peremptory challenges—opposition to death penalty

The trial court did not err by allowing the State to exercise peremptory challenges to excuse prospective jurors who indicated opposition to the death penalty.

Am Jur 2d, Jury §§ 234 et seq.

Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

### 32. Criminal Law § 1343 (NCI4th)— heinous, atrocious, or cruel aggravating circumstance—constitutional instruction

The trial court's instruction on the heinous, atrocious, or cruel aggravating circumstance was not unconstitutionally vague.

Am Jur 2d, Criminal Law §§ 598 et seq.

Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.

### 33. Criminal Law § 1325 (NCI4th)— consideration of mitigating circumstances—propriety of instructions

The trial court's instructions on Issues Three and Four on the Issues and Recommendation as to Punishment form in a capital trial were proper.

Am Jur 2d, Trial §§ 888 seq.

**34. Criminal Law § 1326 (NCI4th)— mitigating circumstances—instruction on burden of proof**

The trial court did not erroneously instruct the jury on defendant's burden of proving mitigating circumstances.

**Am Jur 2d, Trial §§ 888 seq.**

**35. Criminal Law § 762 (NCI4th)— instructions on reasonable doubt**

The trial court did not commit constitutional error when it defined reasonable doubt in the jury instructions at both phases of a capital trial.

**Am Jur 2d, Jury §§ 890 et seq.**

**36. Constitutional Law § 371 (NCI4th)— death penalty—not cruel and unusual punishment**

Imposition of the death penalty upon defendant did not violate his rights under the Eighth Amendment to the U.S. Constitution.

**Am Jur 2d, Criminal Law §§ 588 et seq.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances— Supreme Court cases. 111 L. Ed. 2d 947.**

**37. Criminal Law § 1322 (NCI4th)— life imprisonment—jail time—refusal to instruct**

The trial court did not err by failing to inform the jury in a capital trial about the amount of time defendant would spend in jail if sentenced to life imprisonment.

**Am Jur 2d, Trial §§ 100, 890.**

**Procedure to be followed where jury requests information as to possibility of pardon or parole from sentence imposed. 35 ALR2d 769.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**38. Criminal Law § 1373 (NCI4th)— death penalty not disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant, where the jury found defendant guilty upon theories of premeditation and deliberation and felony murder; the evidence supported the jury's finding of the aggravating circumstances that the murder was especially heinous, atrocious, or cruel and was committed while defendant was engaged in a sexual offense; the only statutory mitigating circumstance found by the jury was that defendant was under the influence of a mental or emotional disturbance; the victim was murdered in a brutal, merciless, and dehumanizing attack which included severe blunt-trauma injuries and a depraved sexual offense; and defendant committed the murder at the victim's home.

**Am Jur 2d, Criminal Law § 628.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Barnette, J., at the 20 September 1993 Criminal Session of Superior Court, Johnston County, on a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 11 April 1995.

*Michael F. Easley, Attorney General, by William B. Crumpler and Valerie B. Spalding, Assistant Attorneys General, and Simone E. Frier, Staff Attorney, for the State.*

*W. Terry Sherrill and Ann L. Hester for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of the first-degree murder of Jennifer Narron, his former girlfriend, and sentenced to death. He appeals from his conviction and sentence. We conclude that defendant received a fair trial, free of prejudicial error, and that the sentence of death is not disproportionate.

The State's evidence tended to show that the victim was killed on 9 April 1992. At that time she was living with her boyfriend, Michael Hopkins, in his Smithfield apartment. Hopkins testified that he last saw the victim alive at about 4:00 p.m., just before he went to bed. When he awoke around 7:30 p.m., he discovered the victim's body

lying in a pool of blood near the front steps outside his apartment. Hopkins ran to his landlady's house and called the police; he waited at the end of the driveway until the officers arrived.

The Smithfield Police Department received a call at 7:38 p.m., and officers arrived at Hopkins' apartment a few minutes later. They found the victim's naked body face down next to the apartment steps. Her head lay in a pool of blood, and a stick protruded from her rectum. Her left arm extended along the left side of her body, palm up; her right index finger was in her mouth. SBI Special Agent David McDougall examined the scene. He found several articles of the victim's clothing on the ground near the body and a three-inch-thick log containing blood and strands of hair atop a woodpile not far away. He saw no signs of a struggle or other violence inside the apartment.

Dr. Karen Chancellor, a forensic pathologist who performed the autopsy, testified that she found multiple bruises and abrasions on the victim's head, face, and neck. The lower jawbone was fractured in two places, and the back of the scalp had four separate lacerations, each exposing bone. She also found multiple skull fractures, hemorrhaging around the brain and brain stem, and bruises of the brain tissue. Chancellor testified that both internal and external lacerations existed in and around the vagina and rectum. Further, the injuries around the rectal area were consistent with an object being rotated in the rectum. She opined that death resulted from blunt-force trauma to the head, the victim had been hit at least five times, and the log McDougall found could have been used to inflict the injuries.

SBI Special Agent Scott Worsham testified that hair taken from the log was consistent with the victim's. He removed the stick from the victim's rectum under McDougall's supervision. The stick had been embedded about six and one-half inches into the rectum and inserted at such an angle that it could have penetrated some other part of the body, such as the vaginal area.

SBI Special Agent Mark T. Boodee, an expert in forensic serology, testified about the results of DNA testing, which revealed that blood samples taken from the pants defendant wore on the night of the murder contained DNA material that matched the victim's. SBI Special Agent Peter Duane Deaver, another expert forensic serologist, testified that blood found on the log and on defendant's pants was the same type as the victim's blood but not the same as defendant's.

Defendant testified that he and the victim had lived together for about three and one-half years; they broke up in March 1992. On the day of the murder he left work around 3:00 p.m., drank some beer on the way home, and also drank a few beers at a local tavern. He arrived at his grandmother's house, where he was living, between 5:30 and 6:00 p.m. He then went to Mike Hopkins' home at about 6:30. He and the victim sat on the steps outside the apartment talking for a while. The next thing he remembered was being two or three blocks away from Hopkins' apartment, walking in an agitated state. He noticed a little blood on his hand. He then met some friends and drank with them from 8:30 until about 11:00 p.m. He did not get drunk.

Two psychiatric experts testified for defendant. Dr. Robert Rollins testified that defendant had average intelligence and no major disturbance of mood or thinking. Defendant was distrustful, expected people to mistreat him, and lacked concern about other people. Rollins diagnosed defendant with alcohol abuse and dependence as well as adjustment disorder, which included depression. Dr. Billy Royal diagnosed defendant with depression, alcohol and marijuana abuse, and personality disorder. He considered the disorder to include immaturity, impulsivity, and dependence in the relationship with the victim. Both doctors opined that defendant's ability to form a specific intent to kill and to premeditate and deliberate was impaired on 9 April 1992. Both also noted defendant's history of violence toward the victim.

At sentencing the State relied on its guilt phase evidence and also introduced an eight-by-ten-inch photograph that depicted the stick protruding from the victim's rectum. This photograph had been excluded from the guilt phase.

Defendant's sister testified at sentencing that defendant supported the victim as best he could and always helped his two deaf brothers. She also stated that their father, who was not at home much due to his work, hit defendant and assaulted their mother. Further, defendant used various drugs, including marijuana and cocaine.

Psychiatric testimony offered at sentencing showed that defendant grew up in a dysfunctional family environment that included abuse of his mother and severe punishment of defendant for his transgressions. He became dependent upon alcohol early in his teenage years; this dependence exacerbated the difficulty he experienced in dealing with the end of his relationship with the victim. According to

the expert testimony, defendant suffered from depression, substance dependence, and personality disorder at the time of trial.

The jury found defendant guilty of first-degree murder under the theory of premeditation and deliberation and under the felony murder rule; it also convicted defendant of first-degree sexual offense. At sentencing the jury found two aggravating circumstances: "The capital felony was committed while the defendant was engaged in a sex offense"; and "The capital felony was especially heinous, atrocious, or cruel." The jury found one statutory mitigating circumstance, "The capital felony was committed while the defendant was under the influence of mental or emotional disturbance," and fourteen of the nineteen nonstatutory mitigating circumstances submitted. It unanimously recommended a sentence of death, which the trial court accordingly imposed.

Additional facts will be presented as necessary for analysis of the issues.

## PRETRIAL PHASE

First, defendant contends the trial court erred by denying his pretrial motion to suppress the statement he made to Lieutenant Cuddington and Agent Dees at the Smithfield Police Department on 10 April 1992 and all evidence obtained as a result thereof. He argues that his statement was obtained illegally and that the physical evidence should have been excluded as the fruit of the poisonous tree. The State's evidence at the pretrial hearing tended to show that Cuddington and Dees began to look for defendant at approximately 1:00 a.m. on 10 April after they learned of defendant's past relationship with the victim. They found defendant at his grandmother's house at 3:00 a.m. While Cuddington asked defendant if he would go to the police station for questioning, Dees remained in the yard near the street. Both Cuddington and Dees drove unmarked police cars and wore plain clothes at that time. Defendant agreed to accompany Cuddington to the police station and rode in the front seat of Cuddington's squad car. He was not handcuffed or frisked.

Cuddington and Dees escorted defendant into the shift commander's room at the Smithfield Police Department at about 3:25 a.m. Dees sat at one desk, Cuddington sat at another, and defendant sat in a chair six or eight feet in front of Dees. The officers left the door open at first but later closed it to shut out hallway noise. They told defendant they wanted to shut the door and explained why; defend-

ant voiced no objection. The officers assured defendant that they would not lock the door and that he was not under arrest and could leave at any time. Dees then advised defendant of his *Miranda* rights as a precaution. Defendant indicated that he understood each right, and at about 3:28 a.m. he agreed to waive them. Dees then began asking defendant general questions about his occupation and usual daily activities before inquiring into his actions on 9 April 1992. Defendant stated that he had stopped at a tavern after work that day and consumed six or seven beers. He also stated that he saw the victim on his way home from the tavern and that they said "hello" in passing.

Defendant then sat back in his chair and said, "I think I need to speak to a lawyer." Cuddington asked if defendant had a particular lawyer in mind; defendant said he was not sure. Cuddington handed defendant a telephone directory opened to the Yellow Pages section containing attorney listings for the Smithfield area. As he did so, Dees told defendant he could talk to a lawyer and could continue to talk to the police if he wanted to. Defendant briefly perused the Yellow Pages and then said, "well, let's go ahead and talk," or words to that effect. Dees reminded defendant of his rights to remain silent and to the assistance of an attorney; defendant indicated he understood his rights. Defendant had not been placed under arrest at that time. During the ensuing interview, defendant stated that he had seen the victim, they sat on the steps of her house, they argued, and he hit her. The next thing he knew, he was walking down the road toward his grandmother's house. He did not know how many times he hit her but said, "I didn't mean to do it." Twice he asked Cuddington to kill him because he had killed the victim. At some point during the interview, defendant told Dees and Cuddington where in his grandmother's house they would find the clothes he was wearing when he hit the victim. SBI Special Agent McDougall and Patrolman Craig Fish were dispatched to retrieve the clothing. Dees wrote out a short statement indicating that defendant hit the victim but did not remember anything else; defendant refused to sign it. Defendant first mentioned hitting the victim at about 4:00 a.m. and was placed under arrest at about 6:45 a.m. when the interview concluded.

Defendant testified at the hearing that he had accompanied Cuddington to the police station because he felt he had to, even though no one placed handcuffs on him, pulled a weapon, or touched him in any way. None of the officers made defendant feel that he was under arrest at that time. Even after Cuddington and Dees shut the door to the interview room, defendant knew he was free to leave.

Defendant further testified that while he looked at the Yellow Pages, he asked what time it was. The officers said it was about 3:30 a.m.; defendant then said he probably could not find a lawyer willing to come to the station at that time. According to defendant, one of the officers agreed and then said they only had a few more questions to ask, if defendant was willing to answer them without a lawyer present. The court denied defendant's motion to suppress; both defendant's statement and the clothing found at his grandmother's house were admitted at trial.

[1] Defendant argues that the trial court erred in two ways when it denied his pretrial motion to exclude his incriminating statement. First, defendant submits the court erred by not determining whether he was seized in violation of the Fourth Amendment to the United States Constitution. Defendant did not make an argument based on the Fourth Amendment to the United States Constitution at trial; therefore, "he may not properly present an argument based thereon in this Court." *State v. Gibbs*, 335 N.C. 1, 42, 436 S.E.2d 321, 334 (1993), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 881 (1994).

[2] Second, defendant contends the trial court erred by concluding that he voluntarily reinitiated interrogation after requesting an attorney by saying, "well, let's go ahead and talk." Defendant relies on *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, *reh'g denied,* 385 U.S. 890, 17 L. Ed. 2d 121 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 376, *reh'g denied,* 452 U.S. 973, 69 L. Ed. 2d 984 (1981), which together establish that custodial interrogation must cease when an accused requests an attorney and may not be resumed by police officers without an attorney present. He contends the police improperly resumed interrogation after his request for an attorney when they told him he could still talk to them if he wanted to. We conclude that defendant was not in custody when he requested an attorney; thus, *Miranda* and *Edwards* do not apply.

Both *Miranda* and *Edwards* protect suspects during custodial interrogation. *Minnick v. Mississippi*, 498 U.S. 146, 150-51, 112 L. Ed. 2d 489, 495-96 (1990); *State v. Medlin*, 333 N.C. 280, 290, 426 S.E.2d 402, 407 (1993). A suspect is in custody for purposes of *Miranda* and *Edwards* when, considering the totality of the circumstances, "a reasonable person in the suspect's position would [not] feel free to leave at will [but would] feel compelled to stay." *Medlin*, 333 N.C. at 291, 426 S.E.2d at 407. "[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of move-

ment' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 1279 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 50 L. Ed. 2d 714, 719 (1977)).

The record reveals that defendant's freedom of movement was not restrained during his interview so as to render him in custody for purposes of the Fifth Amendment to the United States Constitution. Defendant testified that he knew he was free to leave, even when the door to the interview room was shut. He was never handcuffed or frisked; at most the police patted him down before the interview to make sure he was unarmed. Dees and Cuddington never threatened defendant, raised their voices, or ordered defendant to do anything. We conclude that when defendant asked for a lawyer, a reasonable person would have felt free to leave. Thus, the prohibitions of *Edwards* do not apply here, and defendant's rights were not violated when Dees told him he could continue talking to the officers if he wished. The trial court properly denied defendant's motion to suppress his incriminating statements. It follows that the "fruit of the poisonous tree" doctrine did not require suppression of the physical evidence obtained as a result thereof. *See Medlin*, 333 N.C. at 295, 426 S.E.2d at 409. These assignments of error are overruled.

JURY SELECTION

[3] Defendant assigns as error the manner in which the trial court conducted *voir dire*. After the court preliminarily instructed the venire regarding the charges pending against defendant and read the names of potential witnesses, it divided the group into four panels of about twelve persons each. The persons on each panel would be questioned individually as requested by defendant. The court instructed panel one to remain in the courtroom, panel two to return at 2:00 p.m. that day, panel three to report at 9:30 the following morning, and panel four to report at 2:00 the following afternoon. It then stated, "I'm going to allow another courtroom to borrow [panels three and four] this morning and maybe this afternoon on a case that's going to be tried." On the second day of *voir dire*, the trial court called the persons on panels three and four who had not been selected to serve on the jury at the other trial, placing those who had been selected at the end of the line.

One person from panel four, who had not been selected to serve at the other trial, sat on defendant's jury. Defendant contends that the jury selection process in the other courtroom became part of the jury selection in his trial when the trial court separated the persons on

panels three and four according to whether they had been selected to serve on the jury in the other courtroom. He further contends that because he was not present in the other courtroom for that jury selection, he was absent from a stage of his trial.

Defendant's right to be present in the courtroom at every stage of his trial is protected by the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, *State v. Buchanan*, 330 N.C. 202, 208-09, 410 S.E.2d 832, 836 (1991), as well as Article I, Section 23 of the North Carolina Constitution, *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990). A defendant may not waive this right. *Smith*, 326 N.C. at 794, 392 S.E.2d at 363. However, defendant has failed to show error in this regard. Defendant's contention that the court's procedure somehow prejudiced him rests on pure speculation. We will not find reversible error on this basis. *See State v. Bell*, 338 N.C. 363, 379, 450 S.E.2d 710, 719 (1994), *cert. denied*, — U.S. —, 132 L. Ed. 2d 861 (1995). This assignment of error is overruled.

[4] Defendant next contends the trial court erred by striking prospective jurors Capps and Keen for cause. He asserts that the court should have excused them for their views on the death penalty only if those views would have prevented or substantially impaired the performance of their duties as jurors in accordance with their instructions and their oaths. *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985). Defendant contends that while Capps and Keen stated an opposition to the death penalty, they were not excludable under *Witt* because they also indicated that their beliefs would not "substantially impair" their ability to carry out their duties as jurors. We disagree.

The *voir dire* testimony of Capps and Keen demonstrated a bias against the death penalty. In response to questions from both the prosecution and the trial court, Capps indicated on three separate occasions that she either would not or could not impose the death penalty. Similarly, Keen told both the prosecutor and the court that under no circumstances could he vote to impose death. Despite this testimony, defendant argues, these jurors were improperly excused for cause because both stated during rehabilitation that they could "fairly consider" both life imprisonment and death as possible punishments. This Court has noted that a prospective juror's equivocation regarding the death penalty may indicate a "conscientious desire

to do his duty as a juror and to follow the trial court's instructions in the face of recognizing his personal inability to impose the death penalty." *State v. Yelverton*, 334 N.C. 532, 544, 434 S.E.2d 183, 190 (1993). The trial court properly could have determined that the rehabilitation testimony of Capps and Keen reflected such a desire rather than an actual ability to sentence defendant to death. "The granting of a challenge for cause where the juror's fitness or unfitness is arguable is a matter within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion." *State v. Abraham*, 338 N.C. 315, 343, 451 S.E.2d 131, 145 (1994). We conclude that the court acted within its discretion by excusing these jurors for cause. This assignment of error is overruled.

[5] Defendant next contends the trial court erred by striking prospective juror Sanders for cause without allowing defendant an opportunity to rehabilitate. Sanders indicated during *voir dire* that she strongly opposed the death penalty and that her views would interfere with her ability to execute her duties as a juror. For example, the prosecutor asked her if she would "automatically vote against the death penalty"; Sanders replied that she would. She again answered affirmatively when the trial court asked, "Ms. Sanders, as I understand it, under no circumstances could you render a verdict that meant the death penalty. Is that what you're saying?" The court then allowed the State's challenge for cause without allowing defendant an attempt at rehabilitation.

Whether to excuse a prospective juror for cause lies within the trial court's discretion. *State v. McDowell*, 329 N.C. 363, 379-80, 407 S.E.2d 200, 209 (1991). A trial court does not abuse its discretion when it precludes rehabilitation by a defendant where the State's challenge for cause is supported by a prospective juror's *voir dire* testimony and the defendant fails to show that further questioning would likely have produced different testimony. *State v. McCollum*, 334 N.C. 208, 234, 433 S.E.2d 144, 158 (1993), *cert. denied*, — U.S. —, 129 L. Ed. 2d 895, *reh'g denied*, — U.S. —, 129 L. Ed. 2d 924 (1994). Defendant argues that had the court allowed him an attempt at rehabilitation, Sanders might have revealed a willingness to set aside her personal feelings and follow the court's instructions regarding the death penalty.

Defendant has failed to identify anything in the record to support his position. There is no reason to believe an attempt to rehabilitate Sanders would have yielded different testimony. Sanders' responses

to questions from both the prosecution and the trial court established that under no circumstances would she vote to impose death. Faced with such unequivocal testimony, the trial court had the discretion not to allow rehabilitation. Defendant has not shown an abuse of that discretion. This assignment of error is overruled.

GUILT PHASE

Next, defendant contends the trial court erred by admitting four photographs into evidence and improperly instructing the jury regarding them. Defendant filed a motion *in limine* seeking to exclude certain photographs on the grounds that they were repetitive, unduly grisly, and more prejudicial than probative. The trial court granted the motion as to two photographs but denied it as to four, exhibits fourteen through seventeen, which showed the victim's naked body at the crime scene. The court excluded exhibits twelve and thirteen from the guilt phase but ruled that both photos would be admissible at sentencing. Exhibits fourteen through seventeen were admitted over defendant's objection at trial for the limited purpose of illustrating testimony.

Defendant argues that the exhibits should have been excluded because they were repetitious and their probative value was outweighed by the danger of unfair prejudice. *See* N.C.G.S. § 8C-1, Rule 403 (1992). What represents "an excessive number of photographs" and whether the "photographic evidence is more probative than prejudicial" are matters within the trial court's discretion. *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Where, as here, a party introduces photographs for illustrative purposes and not solely to arouse prejudice or passion, they are admissible even if revolting and repetitious. *State v. Peterson*, 337 N.C. 384, 394, 446 S.E.2d 43, 49 (1994). Each photograph about which defendant argues was relevant to illustrate specific testimony. They depicted the victim's body from four different angles at the crime scene as examined by McDougall. Three also revealed blood stain patterns, about which Agent Deaver testified. Such photographs are not rendered inadmissible "by the portrayal of the gruesome events which the witness testifies they accurately portray." *State v. Elkerson*, 304 N.C. 658, 665, 285 S.E.2d 784, 789 (1982). The number of photographs (four) was not excessive. Their admission, therefore, was not error.

[7] The trial court instructed without objection that the jury could consider certain photographs "as evidence of facts that they illustrate." Defendant argues that this was plain error because some pho-

tographs were admitted for illustrative purposes only. The plain error rule applies in those rare cases where an error " 'amounts to a denial of a fundamental right of the accused' " or is " 'something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). To determine whether plain error occurred, we must examine the whole record and decide whether the instruction had a "probable impact" on the jury's verdict. *Id.* at 661, 300 S.E.2d at 378-79. Our review of the record reveals that the instruction could not have had such an impact. Given the physical and circumstantial evidence, as well as defendant's confession, any error concerning whether photographs constituted substantive or illustrative evidence probably did not affect the jury's deliberations or decision. These assignments of error are overruled.

[8] Defendant next argues the trial court erred by allowing Agent Boodee to testify about the results of DNA testing and the statistical significance thereof. Boodee testified as an expert in DNA analysis and molecular genetics. He testified that DNA in blood samples found on the pants defendant wore on the night of the murder matched the victim's DNA. He further testified that the probability of another person unrelated to the victim having the same DNA banding pattern was one in 5.5 billion for each of the Caucasian, African-American, and Lumbee populations in North Carolina. Defendant argues that the trial court should not have allowed Boodee to testify because he did not personally perform the DNA tests, prepare the guidelines by which the testing was done, or write the report from which he testified. Defendant contends Boodee's testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution as well as N.C.G.S. § 8C-1, Rules 702, 703, and 403. We disagree.

Inherently reliable information is admissible to show the basis for an expert's opinion, even if the information would otherwise be inadmissible hearsay. *See State v. Huffstetler*, 312 N.C. 92, 106-08, 322 S.E.2d 110, 119-21 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). SBI Special Agent Anita Matthews, an intern in the DNA unit, performed the DNA analysis under Boodee's direct supervision. Boodee reviewed her final report, as did two additional special agents in the DNA unit. Thus, the report was inherently reliable, and Boodee could use it to form his opinions. Boodee was vigorously cross-examined about the DNA testing procedures at the SBI and about his

opinions. Therefore, the testimony did not violate defendant's Confrontation Clause rights.

N.C.G.S. § 8C-1, Rule 702 provides: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion." Boodee qualified as an expert, and his scientific testimony could assist the jury in determining whether defendant killed the victim. Thus, he was competent to testify, and allowing him to do so did not violate Rule 702.

N.C.G.S. § 8C-1, Rule 703 permits an expert to give an opinion based on evidence not otherwise admissible at trial, provided the evidence is of the type reasonably relied upon by other experts in the field. Boodee based his opinion on the results of DNA analysis performed by Matthews and supervised by Boodee. DNA evidence is admissible in North Carolina. *State v. Pennington*, 327 N.C. 89, 100, 393 S.E.2d 847, 854 (1990). Boodee's testimony in no way violated Rule 703.

Finally, defendant argues that Boodee's testimony should have been excluded under N.C.G.S. § 8C-1, Rule 403. This argument has no merit. The DNA evidence was highly probative of the identity of the victim's killer. It did not unfairly prejudice defendant, confuse the issues, or mislead the jury. The trial court properly allowed Boodee to testify about the results of DNA analysis and the statistical significance thereof.

**[9]** Defendant next argues the trial court erred by overruling his objections to the testimony of Special Agent Deaver, an expert in forensic serology and bloodstain pattern interpretation. Defendant contends Deaver's testimony was incompetent and irrelevant because it lacked an adequate foundation and was speculative. Moreover, argues defendant, its probative value was outweighed by the danger of unfair prejudice and confusion of the issues. Defendant complains about the portion of Deaver's testimony regarding the number of blows inflicted upon the victim, the position of the victim's body when she was struck, and the force of the blows. Deaver based his opinions on his examination of the bloodstain patterns found on the ground, the porch steps, and the log discovered on the woodpile.

Defendant has failed to show error in this regard. The prosecutor laid an adequate foundation for Deaver's testimony. Deaver had com-

pleted a basic and advanced course in bloodstain pattern interpretation and was teaching that subject to SBI agents. Before testifying about his findings in this case, he described in detail the process of interpreting bloodstain patterns. Deaver did not speculate but gave opinions based on his examination of the physical evidence at the crime scene. The testimony was competent and relevant to show the manner of the victim's murder; its probative value was not outweighed by the danger of unfair prejudice. The trial court, therefore, properly admitted the evidence. This assignment of error is overruled.

Next, defendant argues the trial court erred by allowing inadmissible hearsay testimony, which defendant had moved to exclude, about statements the victim made and a letter she purportedly wrote to defendant. The State presented two witnesses who testified about statements the victim made during the six to eight weeks preceding the murder. Michael Hopkins testified that the victim told him while they were living together that "she had broken up with [defendant] and—but, as far as seeing—seeing anybody, she wasn't." David Bunch, the victim's co-worker, testified that the victim told him that defendant beat her on weekends when he was drunk, that she was going to leave defendant because of the beatings, that she had broken off her relationship with defendant and was seeing Hopkins, and that defendant wanted to talk to her before he left the state so they could part as friends. Bunch also testified about a conversation between the victim and her mother and sisters in which the victim stated, "I can't understand why you all want me to be with [defendant]. I have who I want, if you all can't be around me without having [defendant] . . . leave, stay the hell away from me." Finally, Lieutenant Cuddington read into evidence a letter the victim apparently wrote in which she mentioned the abuse she suffered from defendant.

[10] The portion of Hopkins' testimony about which defendant complains was neither mentioned in defendant's motion nor objected to at trial. Defendant therefore failed to preserve this assignment of error for appellate review under N.C. R. App. P. 10(b)(2); *see State v. Hamilton*, 338 N.C. 193, 208, 449 S.E.2d 402, 411 (1994). Defendant also failed specifically and distinctly to contend that the error amounts to plain error, thereby waiving appellate review under N.C. R. App. P. 10(c)(4). *See Hamilton*, 338 N.C. at 208, 449 S.E.2d at 411.

[11] At the hearing on defendant's motion, the trial court ruled that Bunch's testimony and the letter from the victim to defendant were

admissible under N.C.G.S. § 8C-1, Rule 804(b)(5), which provides in part:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness [is admissible] if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Defendant argues this ruling was erroneous because the statements were not probative of a material fact and lacked circumstantial guarantees of trustworthiness. Defendant also argues the trial court failed to make the findings of fact regarding circumstantial guarantees of trustworthiness required by *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985).

The trial court found that the statements were evidence of motive and identity. Further, they were relevant to defendant's intent: " '[I]ll-will or previous difficulty between the parties' is among the circumstances that a jury may consider in deciding that defendant killed with premeditation and deliberation." *State v. Faucette*, 326 N.C. 676, 686, 392 S.E.2d 71, 76 (1990) (quoting *State v. Jackson*, 317 N.C. 1, 23, 343 S.E.2d 814, 827 (1986), *sentence vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987)). Our review of the record reveals that the evidence supports the court's determination that the statements were probative of material facts.

While the trial court concluded that the statements possessed the requisite trustworthiness, it failed to make findings of fact in that regard. This omission was erroneous under *Smith*. We conclude, however, that the record sustains the court's conclusions. Moreover, it contains overwhelming evidence of defendant's guilt—including his confession, DNA test results, and blood-type matching—which points unerringly to defendant as the perpetrator of this crime. The error, therefore, is harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988); *see Faucette*, 326 N.C. at 687-88, 392 S.E.2d at 77 (failure to make the requisite findings held harmless beyond a reasonable doubt where evidence of defendant's guilt was overwhelming). This assignment of error is overruled.

[12] Defendant also argues that the trial court's instructions regarding voluntary intoxication and diminished capacity were erroneous. The trial court instructed the jury as follows:

> There is evidence in this case which tends to show that the defendant was intoxicated at the time of the acts alleged in this case, and/or that he was suffering from a mental or emotional condition which affected his ability to plan. Now, generally, voluntary intoxication is not a legal excuse for a crime, however if you find that the defendant was . . . intoxicated and that/or that he was suffering from a mental condition or a combination of these, you should consider whether this affected his ability to formulate the specific intent which is required for conviction of first degree murder under this theory.

> In order for you to find the defendant guilty of first degree murder under this theory, that is the theory of malice, premeditation and deliberation, you must find, beyond a reasonable doubt, that he killed the deceased . . . with malice and [as] a result of premeditation and deliberation. If as a result of intoxication and/or because of his mental or emotional condition . . . he did not have the specific intent to kill Jennifer Narron, formed after premeditation and deliberation, then he is not guilty of murder in the first degree under this theory, that is the theory of malice, premeditation and deliberation.

> Finally, in considering whether malice, premeditation and deliberation existed, you may consider the opinions rendered by expert witnesses regarding those elements, in other words, Dr. Rollins and Dr. Royal.

After so instructing the jury, the court asked counsel if they had any objections. Defense counsel entered one exception for the record that is unrelated to the instruction at issue. Defendant's proposed instruction included what defendant now calls a "final mandate": "Therefore, I charge you that if upon considering the evidence with respect to the [d]efendant's intoxication you have a reasonable doubt as to whether the [d]efendant formulated the specific intent required for a conviction of first degree murder, you will not return a verdict of first degree murder." Defendant now argues that the trial court shifted the burden of proof by omitting defendant's proposed "final mandate." We disagree.

Because defendant did not object to the instruction, we will reverse only upon a finding of plain error, which defendant has not shown. The trial court gave the substance of the instruction defendant requested. "[W]hen a request is made for a specific instruction that is supported by the evidence and is a correct statement of the law, the court, although not required to give the requested instruction verbatim, must charge the jury in substantial conformity therewith." *State v. Holder*, 331 N.C. 462, 474, 418 S.E.2d 197, 203 (1992). The omission of the "final mandate" could not have misled the jury about the burden of proof, especially considering the court's explicit instructions about reasonable doubt and the State's burden of proof. Further, in *Holder* we upheld an instruction substantially similar to this one. *See id.* at 473-75, 418 S.E.2d at 203-04. The trial court's instruction was not erroneous.

[13] Defendant further contends the trial court erred by failing to instruct on diminished capacity as that defense related to the charge of first-degree sexual offense. Defendant did not request such an instruction, did not object at trial to its absence, and has not shown plain error. First-degree sexual offense is not a specific-intent crime; the intent to commit the crime "is inferred from the commission of the act." *State v. Boone*, 307 N.C. 198, 209, 297 S.E.2d 585, 592 (1982). Thus, diminished capacity is not a defense to first-degree sexual offense, and the trial court did not commit error, plain or otherwise, by failing to instruct on that defense.

In a related argument, defendant contends that because the trial court failed to instruct on diminished capacity as a defense to the charge of first-degree sexual offense, the following rulings were also erroneous: the denial of defendant's motion to dismiss the charge of first-degree sexual offense, the refusal to submit the offense of second-degree sexual offense, and the submission of the charge of first-degree murder under the felony murder rule. Defendant also argues that the court's failure to instruct on diminished capacity made its instruction on the "continuous transaction" rule erroneous. Defendant cites no authority in support of his contentions, a violation of Rule 28(b)(5) of the Rules of Appellate Procedure. More importantly, we held above that the trial court did not err in its instructions regarding first-degree sexual offense; it follows that the rulings and instruction complained of here were not erroneous. This assignment of error is overruled.

**[14]** Defendant next argues that he must have a new trial because he was absent from his trial on several occasions. The transcript specifically notes defendant's presence at some, but not all, times during the trial; defendant's argument apparently rests on the fact that the court reporter did not consistently record defendant's presence while court was in session. He contends that "[t]he record does not indicate that [d]efendant was present in the courtroom while trial proceeding[s] were ongoing" and that he was absent from the sentencing proceeding during the presentation of his own witnesses and the opening and closing statements.

Defendant appears to rely on the incompleteness of the record to argue that the State cannot prove this error harmless beyond a reasonable doubt. "[H]owever, whatever incompleteness may exist in the record precludes defendant from showing that error occurred." *State v. Adams*, 335 N.C. 401, 410, 439 S.E.2d 760, 764 (1994). The transcript does not indicate, and defendant has not shown, that he was absent. We will not assume error "when none appears on the record." *State v. Williams*, 274 N.C. 328, 333, 163 S.E.2d 353, 357 (1968). This assignment of error is overruled.

SENTENCING PHASE

Defendant next argues that the trial court erred by allowing the State to introduce at sentencing an eight-by-ten-inch color photograph of the victim's naked body, from the rear, that showed the stick protruding from the body and the injuries to the rectal area. The court had excluded this photograph from the guilt phase. Defendant contends that the court failed to perform the balancing test required by N.C.G.S. § 8C-1, Rule 403 and that the photograph was inadmissible under this rule because it possessed little probative value, created a great danger of unfair prejudice, and served merely to inflame the passions of the jury. We disagree.

**[15, 16]** The Rules of Evidence do not apply in sentencing proceedings. N.C.G.S. § 8C-1, Rule 1101(b)(3) (1992). Any evidence the court "deems relevant to sentence" may be introduced at this stage. N.C.G.S. § 15A-2000(a)(3) (Supp. 1994). The State "must be permitted to present *any* competent, relevant evidence . . . which will substantially support the imposition of the death penalty." *State v. Brown*, 315 N.C. 40, 61, 337 S.E.2d 808, 824 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). Thus, the trial court

was not required to perform the Rule 403 balancing test. Photographs of the victim depicting injuries to the body and the manner of death can be relevant to issues to be determined at sentencing. *See State v. Lee*, 335 N.C. 244, 279, 439 S.E.2d 547, 565, *cert. denied*, — U.S. —, 130 L. Ed. 2d 162, *reh'g denied*, — U.S. —, 130 L. Ed. 2d 532 (1994). The court found that the photograph was relevant to the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. *See* N.C.G.S. § 15A-2000(e)(9). The record supports that determination. We therefore conclude the trial court did not err by admitting the photograph at sentencing. This assignment of error is overruled.

[17] In another assignment of error, defendant argues that the trial court erred by sustaining the State's objection to two questions asked of defense expert Dr. Royal. Defense counsel asked Dr. Royal whether he "had seen indications of remorse on [defendant's] part" and what he had observed of "[d]efendant's reaction to [the victim's] death." Defendant argues that the trial court should have allowed Royal to answer the questions because the testimony was relevant and admissible to prove the mitigating circumstance that defendant felt remorse following the murder. We agree that the trial court erred but conclude that the error was harmless beyond a reasonable doubt.

We note that defendant failed to make an offer of proof as to how Royal would have answered the questions. That failure is not fatal, however, because the record clearly reveals the " 'essential content' of the excluded testimony and its significance." *State v. Hester*, 330 N.C. 547, 555, 411 S.E.2d 610, 615 (1992). Defense counsel sought to elicit testimony about defendant's remorse for the crime through these two pointed questions. Such evidence was relevant to the nonstatutory mitigating circumstance "[t]hat within a short time following the crime defendant exhibited remorse and sorrow."

Assuming *arguendo* that this error had constitutional implications under *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), and its progeny, we nevertheless conclude that it was harmless beyond a reasonable doubt. Despite uncontroverted evidence thereof, the jury did not find the mitigating circumstance regarding defendant's remorse. For example, Lieutenant Cuddington testified that defendant cried during his police interview and asked Cuddington to kill him for what he had done. Further, the jury saw defendant cry during his direct examination. Given these clear indications of defendant's sorrow and remorse, we conclude that the exclusion of Dr. Royal's testi-

mony was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b). This assignment of error is overruled.

Defendant next contends that two portions of the prosecutor's closing argument were grossly improper in that they contained statements unsupported by law or the evidence. Both related to the aggravating circumstance that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). Defendant objected during one part and assigns error to the trial court's overruling of his objections. Defendant failed to object during the remaining portion but asserts that the trial court should have intervened *ex mero motu* to censor the prosecutor's comments. We disagree with both contentions.

[18] First, defendant argues that the trial court should have sustained his objections to the segment of the closing argument in which the prosecutor stated that the evidence supported inferences that: (1) the victim was alive as defendant bludgeoned her, (2) the victim was alive when defendant inserted the tree limb into her rectum, and (3) defendant twisted the stick in the rectum as he inserted it. Defendant contends the trial court's overruling of his objections allowed the prosecutor to urge the jury to find the (e)(9) circumstance based on the evidence of the sex offense. We conclude, however, that the statements to which defendant objected represented references to the pitiless and dehumanizing manner of the murder. The acts depicted highlight the excessive brutality and cruelty of the killing. Thus, the trial court properly overruled defendant's objections.

Second, defendant argues that the trial court should have intervened during the portion of the closing argument in which the prosecutor gave a chronological summary of the crime. The prosecutor stated:

This was not a normal killing. . . . Picture in your mind, if you will, a knock on the door. [The victim] answers, comes out sits on the steps and talks. . . . Then the man who has used a stick before, to break jaws, gets mad again. He disrobes her in broad daylight outside of the apartment. Then he grabs a log and he begins to use it like a club. . . . She falls, and is helpless on the ground. . . . [H]e . . . strikes with the log against her head again and again and again. . . . [Then h]e grabs a different kind of stick [and] inserts one prong in her genital area, . . . the other prong into [her] rectum, and with such force, . . . six inches into her rectum. Then he

leaves her there, the stick still in her rectum, the blood still gushing from her head.

Defendant did not object to this portion of the argument; therefore, we will find error only if the comments were so grossly improper as to require intervention *ex mero motu. State v. Basden,* 339 N.C. 288, 300-01, 451 S.E.2d 238, 247 (1994). No such gross impropriety exists here. The argument sought to give the jury a complete picture of the merciless nature of the crime. It did not encourage the jury to find the murder especially heinous, atrocious, or cruel simply on the basis of the sex offense but rather on the basis of the overwhelming brutality of the crime. Further, the evidence supported the argument. The testimony of the medical examiner indicated that a laceration in the victim's vagina connected to the rectum and the abdominal cavity and that the injuries were consistent with the stick having been rotated. This permits the inference that defendant inserted part of the stick into the genital area and part into the rectum, and twisted it. The argument did not require the trial court to intervene absent an objection by defendant. This assignment of error is overruled.

**[19]** Next, defendant argues that the trial court erred by submitting the aggravating circumstances that the capital felony was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9), and that the capital felony was committed while defendant was engaged in the commission of a sex offense, N.C.G.S. § 15A-2000(e)(5). Defendant contends the evidence supporting the former circumstance completely incorporated that supporting the latter. Because separate evidence must exist to support each aggravating circumstance submitted, *State v. Gay,* 334 N.C. 467, 495, 434 S.E.2d 840, 856 (1994), defendant argues that the trial court erred by submitting two circumstances sustained only by the evidence of the sex offense. Defendant further argues that even if the trial court properly submitted both circumstances, it erred by failing to instruct the jury that it could not consider the same evidence in support of more than one circumstance. We find no error.

Where separate evidence exists "to support each aggravating circumstance, it is not improper for both . . . to be submitted." *Id.* Different evidence supported each circumstance at issue here. A reasonable juror could have found that the murder was especially heinous, atrocious, or cruel based on the severe blunt-trauma wounds. The medical examiner's testimony revealed the extent of those injuries. The victim suffered multiple skull fractures and lacer-

ations which exposed the skull, and her lower jaw was fractured in two places. She sustained contusions to the brain tissue, brain hemorrhaging at the subdural and subarachnoid levels, and hemorrhaging of the brain stem. This indicated diffuse, severe brain injury. The victim also had numerous abrasions on her head, face, neck, and chest as well as her back, hands, and arms. This evidence, independent of the additional evidence establishing the commission of a sex offense, supported submission of the circumstance that the murder was especially heinous, atrocious, or cruel.

The evidence tending to support the (e)(5) circumstance showed that multiple external abrasions and lacerations existed around the victim's rectum and vagina. Further, the medical examiner testified that some object had been inserted into the rectum or the vagina, causing internal lacerations. A reasonable juror could have determined based solely on this evidence that the murder was committed while defendant was engaged in the commission of a sex offense. The evidence of each aggravating circumstance was sufficient and did not overlap; thus, the trial court did not commit error, constitutional or otherwise, by submitting both to the jury.

[20] The trial court instructed the jury not to "focus on the sexual offense but instead focus on the manner of [the victim's] killing" when considering the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. Defendant contends this instruction was erroneous because it failed to prohibit jurors from considering the same evidence in support of both aggravating circumstances submitted.

Defendant did not object at trial, so we review for plain error. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378. Trial courts "should . . . instruct the jury in such a way as to ensure that jurors will not use the same evidence to find more than one aggravating circumstance." *Gay*, 334 N.C. at 495, 434 S.E.2d at 856. Though it could have been more precise, the instruction here sufficed to meet the requirements of *Gay*. Plenary evidence existed apart from that of the sex offense to support the (e)(9) circumstance. We cannot conclude that the trial court's failure to give a more precise instruction had a probable impact on the jury's sentence recommendation. Thus, we hold that no plain error occurred. *See Odom*, 307 N.C. at 661, 300 S.E.2d at 379. This assignment of error is overruled.

Defendant next assigns as error the trial court's failure to submit two statutory mitigating circumstances. Defendant contends this fail-

ure represents constitutional error which the State cannot prove harmless beyond a reasonable doubt. We disagree.

[21] First, defendant contends the trial court should have submitted the mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1). Before submitting this circumstance, a court must "determine whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity." *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988). If the court decides that a rational jury could so conclude from the evidence, the jury is entitled to determine whether the evidence reveals a significant history. *Id.* A significant history for purposes of N.C.G.S. § 15A-2000(f)(1) is one likely to influence the jury's sentence recommendation. *State v. Sexton*, 336 N.C. 321, 375, 444 S.E.2d 879, 910, *cert. denied*, — U.S. —, 130 L. Ed. 2d 429 (1994).

The evidence here of defendant's prior criminal history includes references to defendant's numerous beatings of the victim, to an incident in which defendant shot an acquaintance in the leg, to a conviction for driving under the influence, and to a guilty plea to assault inflicting serious injury. The assault conviction arose out of an altercation in which defendant hit a man in the head with a large stick, causing a concussion and breaking the man's jaw and ribs. Given the extent of this history, particularly defendant's prior use of a large stick as a dangerous weapon and his multiple beatings of the victim, the trial court properly could have determined that no reasonable juror could have concluded that defendant's criminal history was insignificant. Therefore, the trial court did not err by not submitting the (f)(1) circumstance. *See id.* at 375-76, 444 S.E.2d at 910.

[22] Second, defendant contends the trial court erred by failing to submit the mitigating circumstance of defendant's age at the time of the crime, N.C.G.S. § 15A-2000(f)(7). Defendant testified that he was twenty-nine years old at the time of trial, which would have made him twenty-seven at the time of the crime. Defendant argues, however, that the evidence showed his emotional age to be younger and that testimony regarding his immaturity, dependence on family for housing and transportation, and lack of experience and knowledge required the trial court to submit the (f)(7) circumstance.

Defendant correctly notes that chronological age is not determinative. *See State v. Johnson*, 317 N.C. 343, 393, 346 S.E.2d 596, 624 (1986). The factor of a defendant's age " 'must be considered as relative and . . . weighed in the light of varying conditions and circum-

stances.' " *State v. Oliver*, 309 N.C. 326, 372, 307 S.E.2d 304, 333 (1983) (quoting *Giles v. State*, 261 Ark. 413, 421, 549 S.W.2d 479, 483, *cert. denied*, 434 U.S. 894, 54 L. Ed. 2d 180 (1977)). The evidence here showed that defendant completed high school and that his general knowledge was "sufficient for most purposes." He has average intelligence, with no major disturbance of mood or thinking, and was gainfully employed prior to his arrest. No testimony linked defendant's immaturity and impulsive nature to his age; rather, those traits apparently stemmed from a personality disorder and somewhat dysfunctional family life. Considering these "conditions and circumstances," we conclude that the trial court properly declined to submit the (f)(7) circumstance. These assignments of error are overruled.

Next, defendant assigns error to the trial court's failure to submit six nonstatutory mitigating circumstances. Defendant timely requested all six in writing. To show error in this regard, defendant must establish that the jury could reasonably have found the circumstances to have mitigating value and that the record contains sufficient evidence of the circumstances to require their submission. *State v. Benson*, 323 N.C. 318, 325, 372 S.E.2d 517, 521 (1988). Defendant has not met that burden here.

**[23]** The following two circumstances were not supported by sufficient evidence: "The defendant had provided child support for his child by another woman for several years," and "defendant was the sole supporter of [the victim] while they were living together." The evidence showed only that the woman with whom defendant conceived a child received government support; there was no evidence that defendant paid money to the government agency for the support of his child. Similarly, while the record shows that defendant supported the victim while they lived together, it does not show that he was her "sole supporter." Thus, the trial court did not err by failing to submit these circumstances.

**[24]** The trial court also declined to submit the circumstance, "The defendant became dependent upon alcohol and marijuana as a young adolescent and remained so during his adulthood to the degree that they [a]ffected his judgment and behaviors," concluding it was redundant. Trial judges may consolidate related mitigating circumstances to eliminate redundancy. *See State v. Greene*, 324 N.C. 1, 19-21, 376 S.E.2d 430, 441-43 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand*, 329 N.C. 771, 408 S.E.2d 185 (1991). We agree that the portion of the circumstance

referring to alcohol dependence was subsumed within the circumstance, "The defendant has a history of chronic alcohol dependency and abuse." As to the portion referring to marijuana dependence, the evidence did not support the circumstance. Dr. Rollins testified that defendant had abused marijuana but did not state that he was dependent upon it. Rollins did testify that defendant both abused and was dependent upon alcohol, and he described the difference between abuse and dependence. Because the evidence was insufficient to support submission of a mitigating circumstance concerning defendant's dependence on marijuana, the trial court properly refused to submit it.

[25] Another circumstance requested but not submitted was: "The defendant never developed a normal father[-]son relationship with his father." This was subsumed within two submitted circumstances: "The defendant's mental and/or emotional disturbances were caused in part by the emotional instability of his family," and "defendant had grown up in a dysfunctional family with much discord between his parents and with both parents being 'workaholics' with limited time for their children." Thus, the trial court did not err by refusing to submit the requested circumstance. *See State v. Spruill*, 338 N.C. 612, 661, 452 S.E.2d 279, 305-06 (1994), *cert.denied*, —— U.S. ——, —— L. Ed. 2d ——, 64 U.S.L.W. 3242 (1995).

[26] Defendant also argues that the trial court should have submitted the circumstance: "That within a short time following the crime defendant exhibited remorse and sorrow *and has continued to do so*." (Emphasis added.) The court deleted the emphasized portion but submitted the remainder. Defendant contends the record supported the omitted portion in that defendant cried on the stand when asked on direct examination about his reaction to the victim's death and the sexual offense committed against her. We conclude this evidence showed defendant's continuing remorse and sorrow, and the mitigating circumstance thus should have been submitted as requested.

Assuming *arguendo* that the error was of constitutional dimension under *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), and its progeny, we conclude it was harmless beyond a reasonable doubt. *See* N.C.G.S. § 15A-1443(b); *State v. Hill*, 331 N.C. 387, 415-17, 417 S.E.2d 765, 779-80 (1992) (failure to submit nonstatutory mitigating circumstance harmless beyond a reasonable doubt where error did not preclude jury from considering any mitigating evidence), *cert. denied*, —— U.S. ——, 122 L. Ed. 2d 684, *reh'g denied*, —— U.S. ——, 123

L. Ed. 2d 503 (1993). The jury saw defendant on the stand and heard the evidence relevant to the circumstance, and the court instructed on the "catchall" circumstance, N.C.G.S. § 15A-2000(f)(9), which no juror found to exist. The trial court's ruling did not preclude defendant from presenting, or the jury from considering, any mitigating evidence.

[27] Finally, defendant argues the trial court should have submitted the circumstance that "the defendant at no time resisted arrest or attempted to flee from Johnston County, North Carolina." As with the preceding circumstance, we conclude the trial court should have granted defendant's request. However, the jury knew from the evidence that defendant cooperated with the police and never tried to escape from the police station. Further, the trial court submitted and instructed on the "catchall" circumstance. Thus, we hold that the failure to submit this circumstance was harmless beyond a reasonable doubt. This assignment of error is overruled.

PRESERVATION ISSUES

[28] Defendant contends the trial court committed constitutional error by denying his motion for disclosure of the aggravating circumstances upon which it intended to rely. As defendant concedes, we have considered and rejected his contention. *See, e.g., State v. McKoy*, 323 N.C. 1, 44, 372 S.E.2d 12, 36 (1988), *sentence vacated on other grounds*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990).

[29] Defendant contends the trial court erred by denying his motion for separate juries for the guilt and sentencing phases. Defendants are not entitled to separate juries "unless the original jury is unable to reconvene." *State v. Holden*, 321 N.C. 125, 133, 362 S.E.2d 513, 520 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). We see no reason to reconsider our position on this issue.

[30] Defendant argues that the trial court committed constitutional error by denying his motion to prohibit death-qualifying questions during *voir dire*. As defendant recognizes, we have decided this issue contrary to his position. *See, e.g., State v. Conner*, 335 N.C. 618, 627-28, 440 S.E.2d 826, 831-32 (1994).

[31] Defendant argues that the trial court erred by allowing the State to exercise peremptory challenges to excuse prospective jurors who indicated opposition to the death penalty. We have rejected this con-

tention. *See, e.g., State v. Skipper,* 337 N.C. 1, 57, 446 S.E.2d 252, 283 (1994). Defendant presents no reason to reverse our precedent.

[32] Defendant also contends the trial court erred by giving an inherently vague instruction regarding the aggravating circumstance that the murder was especially heinous, atrocious, or cruel. We have consistently upheld the instruction given. *See, e.g., State v. Syriani,* 333 N.C. 350, 388-92, 428 S.E.2d 118, 139-41, *cert. denied,* — U.S. —, 126 L. Ed. 2d 341 (1993), *reh'g denied,* — U.S. —, 126 L. Ed. 2d 707 (1994).

[33] Defendant assigns as error the trial court's instructions regarding Issues Three and Four on the Issues and Recommendation as to Punishment form. We have consistently approved the instructions given. *See, e.g., Lee,* 335 N.C. at 286-87, 439 S.E.2d at 569-70. Defendant presents no reason to revisit this issue.

[34] Defendant contends the trial court erroneously instructed the jury on his burden of proving mitigating circumstances. We have considered and rejected this contention. *See, e.g., State v. Keel,* 337 N.C. 469, 494, 447 S.E.2d 748, 762 (1994), *cert. denied,* — U.S. —, 131 L. Ed. 2d 147 (1995). We perceive no reason to overturn our precedent.

[35] Defendant asserts that the trial court committed constitutional error when it defined reasonable doubt in the jury instructions at both phases of the trial. Defendant concedes we have rejected his claim on numerous occasions. *See, e.g., State v. Moseley,* 336 N.C. 710, 716-19, 445 S.E.2d 906, 909-10 (1994), *cert. denied,* — U.S. —, 130 L. Ed. 2d 802 (1995). Defendant offers no argument meriting reconsideration of our position on this issue.

[36] Defendant also argues that the trial court's imposition of the death penalty violated his rights under the Eighth Amendment to the United States Constitution. We have repeatedly upheld North Carolina's death penalty statute against such a constitutional challenge. *See, e.g., Skipper,* 337 N.C. at 58, 446 S.E.2d at 284.

[37] Finally, defendant contends the trial court erred by failing to inform the jury about the amount of time defendant would spend in jail if sentenced to life imprisonment. As defendant acknowledges, we have considered and rejected his position. *See, e.g., State v. Green,* 336 N.C. 142, 157-58, 443 S.E.2d 14, 23, *cert. denied,* — U.S. —, 130 L. Ed. 2d 547 (1994).

Defendant makes numerous assignments of error that he fails to address in his brief to this Court. These assignments are deemed abandoned, and we therefore decline to address them. N.C. R. App. P. 28(a), (b)(5).

## PROPORTIONALITY REVIEW

[38] Having found no error in either the guilt or sentencing phase, we must determine whether: (1) the evidence supports the aggravating circumstances found by the jury; (2) passion, prejudice, or "any other arbitrary factor" influenced the imposition of the death sentence; and (3) the sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2).

The jury found defendant guilty of first-degree murder under the theory of malice, premeditation, and deliberation, as well as under the felony murder rule. It also convicted defendant of first-degree sexual offense. The trial court submitted two aggravating circumstances, both of which the jury found: that the murder was committed while defendant was engaged in a sexual offense, N.C.G.S. § 15A-2000(e)(5); and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). We conclude that plenary evidence supports both circumstances. We further conclude, based on our thorough review of the record, that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. We therefore turn to proportionality review.

The trial court submitted three statutory mitigating circumstances: that defendant committed the murder while under the influence of a mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2); that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, N.C.G.S. § 15A-2000(f)(6); and the "catchall," N.C.G.S. § 15A-2000(f)(9). The jury found only the first of these. One or more jurors found fourteen of the nineteen nonstatutory mitigating circumstances submitted. The jury determined that the aggravating circumstances outweighed the mitigating circumstances and recommended a sentence of death.

This murder has several distinguishing characteristics. First, it was a brutal, merciless, and dehumanizing attack, which included severe blunt-trauma injuries and a depraved sexual offense. A defendant who commits a murder "in a particularly egregious manner" is

likely to be sentenced to death. *State v. Harris*, 338 N.C. 129, 162, 449 S.E.2d 371, 387 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 752 (1995). Second, the jury convicted defendant on the basis of both the felony murder rule and the theory of malice, premeditation, and deliberation. "The finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *State v. Artis*, 325 N.C. 278, 341, 384 S.E.2d 470, 506 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). Third, defendant committed the murder at the victim's place of residence. A murder in the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken [at] an especially private place, one [where] a person has a right to feel secure." *State v. Brown*, 320 N.C. 179, 231, 358 S.E.2d 1, 34, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

Defendant contends this case is similar to *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987), one of the cases in which we found a death sentence disproportionate, and that his sentence must therefore be vacated. We disagree. In *Stokes* four males in their late teens and early twenties robbed and beat a man at his warehouse; the victim died fourteen hours after the attack. Two of the cofelons pled guilty to lesser charges. A third, James Murray, pled not guilty; a jury sentenced him to life imprisonment, and we found no error. Stokes was convicted in a separate trial under the felony murder theory. The jury found one aggravating circumstance—that the murder was especially heinous, atrocious, or cruel. It found one or more of the following four statutory mitigating circumstances: that the defendant had no significant history of prior criminal activity, that the defendant was under the influence of a mental or emotional disturbance at the time of the crime, that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, and the defendant's age at the time of the crime (seventeen). *Id.* at 10, 352 S.E.2d at 658. Because the jury did not specify which circumstances it found, we assumed that it found all four. *Id.* at 21, 352 S.E.2d at 664.

In concluding that Stokes' death sentence was disproportionate, we noted that Murray, who received a life sentence, committed "the same crime in the same manner" as Stokes, *id.* at 27, 352 S.E.2d at 667, but that he was older and had a worse criminal record, *id.* at 21, 352 S.E.2d at 664. Further, Murray's jury did not find any of the mitigating circumstances found in Stokes' case. We also noted that no evidence existed as to the identity of the group's ringleader. We held that

Stokes' death sentence was disproportionate in large part because he was "no more deserving of death than his accomplice, . . . indeed he may [have been] less deserving of death in view of the mitigating circumstances involved in [his] case." *Id.* at 27, 352 S.E.2d at 667.

Defendant here, by contrast, acted alone and was twenty-seven at the time of the crime. The jury found only one statutory mitigating circumstance and did not rely on the felony murder rule alone to convict. Stokes' crime, unlike defendant's, did not include a brutal, painful, and pitiless sexual offense and was not committed at the victim's residence. These features distinguish this case from *Stokes* as well as from the six other cases wherein we have held the death sentence disproportionate: *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983).

We have found eleven capitally tried cases in which the two aggravating circumstances and the statutory mitigating circumstance found here were submitted and found. Of those, five were remanded for a new trial or a new sentencing proceeding, thereby eliminating them from our proportionality pool. *See State v. Bacon,* 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 1083 (1995). Life sentences were imposed in only two of the remaining six cases; the remaining four defendants were sentenced to death. We cannot conclude, therefore, that juries have consistently recommended life sentences in cases similar to this one.

We have affirmed the sentence of death in cases similar to this one. In *State v. Huffstetler,* 312 N.C. 92, 322 S.E.2d 110 (1984), *cert. denied,* 471 U.S. 1009, 85 L. Ed. 2d 169 (1985), the defendant beat his mother-in-law to death in her home with a cast iron skillet, inflicting wounds to her head, neck, and shoulders and breaking her jaw in two places. There, as here, the crime was "a senseless, unprovoked, exceptionally brutal, prolonged and murderous assault." *Id.* at 118, 322 S.E.2d at 126. This case is even more egregious because there was no sexual offense in *Huffstetler* as there was here.

In *State v. Fisher,* 336 N.C. 684, 445 S.E.2d 866, *reconsideration denied,* 337 N.C. 697, 448 S.E.2d 535 (1994), *cert. denied,* —— U.S. ——, 30 L. Ed. 2d 665 (1995), the defendant stabbed his long-time girlfriend

STATE v. DAUGHTRY

[340 N.C. 488 (1995)]

repeatedly in the presence of her daughter, whom he also injured during the attack. In contrast to this case, however, the trial court submitted and the jury found the statutory mitigating circumstance that the defendant had no significant history of prior criminal activity. Here, we have determined that the trial court did not abuse its discretion by refusing to submit that circumstance because it properly could have determined that no reasonable juror could have found defendant's criminal history insignificant. The *Fisher* jury also found that the defendant had acted while under the influence of a mental or emotional disturbance, a mitigating circumstance found here. Finally, the murder in *Fisher* did not involve a brutal and dehumanizing sexual offense, as did the murder here.

In *State v. Rose*, 335 N.C. 301, 439 S.E.2d 518, *cert. denied*, — U.S. —, 129 L. Ed. 2d 883 (1994), the victim died as a result of sharp- and blunt-trauma wounds as well as manual strangulation. The jury found two aggravating circumstances: that the defendant had been previously convicted of a felony involving the use or threat of violence to the person, and that the murder was especially heinous, atrocious, or cruel. The jury found no statutory mitigating circumstances but found all nine of the nonstatutory mitigating circumstances submitted. As here, the evidence showed that the victim suffered painful injuries and may have remained conscious for a period of time prior to death.

Finally, we note that this case involved the aggravating circumstance that the murder was especially heinous, atrocious, or cruel, as well as an egregious sexual offense. We have upheld the death penalty in numerous cases where the jury found the especially heinous, atrocious, or cruel circumstance. *See State v. Moseley*, 338 N.C. 1, 64, 449 S.E.2d 412, 449 (1994), *cert. denied*, — U.S. —, 131 L. Ed. 2d 738 (1995). Further, "[w]e have never found a death sentence disproportionate in a case involving a victim of first-degree murder who was also sexually assaulted." *State v. Payne*, 337 N.C. 505, 537, 448 S.E.2d 93, 112 (1994), *cert. denied*, — U.S. —, 131 L. Ed. 2d 292 (1995).

Considering the foregoing, as well as the crime and defendant, we conclude that the death sentence in this case was not excessive or disproportionate. We hold that defendant received a fair trial and sentencing proceeding, free of prejudicial error.

NO ERROR.